Commonwealth v. Benoit.

COMMONWEALTH vs. TYSON J. BENOIT.

Berkshire. April 9, 2008. - August 18, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Examination of jurors, Challenge to jurors, Empanelment of jury, Instructions to jury, Argument by prosecutor. *Constitutional Law,* Jury. *Self-Defense. Evidence,* Self-defense, Prior violent conduct.

This court reversed the defendant's conviction of murder in the second degree, where the Commonwealth did not meet its burden of demonstrating a race-neutral, individualized basis for its peremptory challenge of the only eligible African-American juror. [217-226] COWIN, J., dissenting, with whom GREANEY and SPINA, JJ., joined.

At the trial of an indictment for murder in the first degree, no jury instruction on self-defense was required, where there was no evidence of an attempt by the defendant to avoid further physical combat with the victim or of the defendant's inability to retreat. [226-227]

At a murder trial, the judge properly excluded evidence of prior recent acts of aggression by the victim, where the evidence in the case did not raise the issue of self-defense. [227-228]

This court declined to extend the ruling in *Commonwealth* v. *Adjutant,* 443 Mass. 649 (2005) — which held that a trial judge has discretion to admit evidence of specific acts of prior violent conduct that a victim allegedly initiated, where the defendant claims self-defense and the identity of the first aggressor is disputed — to situations where an instruction on voluntary manslaughter is appropriate, and the defendant is claiming that he acted in the heat of passion due to reasonable provocation or sudden combat. [228] IRELAND, J., concurring.

There was no merit to a criminal defendant's argument that the prosecutor's closing argument improperly referred to a matter that had been excluded from evidence; rather, the prosecutor's argument was grounded in the evidence actually admitted at trial, and represented a fair response to the argument made by the defendant's counsel. [228-229]

INDICTMENT found and returned in the Superior Court Department on July 6, 2005.

The case was tried before *Daniel A. Ford,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Paul J. Caccaviello*, Assistant District Attorney (*Karen L. Carlo*, Assistant District Attorney, with him) for the Commonwealth.

*Daniel R. Williams, Lisa J. Steele, & David M. Siegel* for Massachusetts Association of Criminal Defense Lawyers & another, amici curiae, submitted a brief.

BOTSFORD, J. The defendant was convicted of murder in the second degree by a jury in the Superior Court. On appeal, he argues that (1) the Commonwealth's peremptory challenge to the only eligible African-American juror violated his Federal and State constitutional rights because the prosecutor's proffered reasons supporting the challenge were inadequate; (2) the judge erred in denying his request for an instruction on self-defense; (3) the judge erred in excluding prior recent acts of aggression by the victim that were relevant to the issue of provocation, and therefore relevant to whether the defendant was guilty of manslaughter rather than murder; (4) in his closing argument the prosecutor improperly referred to a matter that had been excluded from evidence; and (5) the judge improperly denied the defendant's motion for a change of venue. We granted his application for direct appellate review. Because we conclude that the Commonwealth did not meet its burden of demonstrating a race-neutral, individualized basis for its peremptory challenge, we reverse the defendant's conviction. Following the discussion of this issue, we consider those of the defendant's other arguments that may arise on retrial.

1. *Peremptory challenge.* a. *Background.*[1] The defendant was tried on a single indictment charging him with murder in the first degree of Anthony Hopkins. The events giving rise to the charge occurred in Pittsfield on May 30, 2005. The defendant, who is black, was seventeen years of age; the victim, who was white, was eighteen years of age.

By the time the trial began in January, 2007, there was no dispute between the Commonwealth and the defendant that the

---

[1]This section provides background information relevant to the peremptory challenge issue. Further factual details concerning the case are mentioned briefly in conjunction with other issues discussed hereafter.

victim had died as a result of stab wounds inflicted by the defendant with a knife during a fight between the two young men outside of the victim's home in Pittsfield. There was also no dispute that race was likely to arise at least as a tangential issue at trial. In particular, at the time of his arrest on May 30, 2005, some hours after the fight with and resulting death of the victim, the defendant gave a statement to the police in which he said that immediately before the actual physical confrontation between him and the victim began, the victim "was on his porch saying that, 'I'm going to stab you nigger, this and that.' " The Commonwealth was intending to introduce the defendant's statement in evidence at trial. In addition, the Commonwealth had given notice that it would seek to introduce evidence of an earlier statement of the defendant to his brother, describing an encounter between the victim and the defendant approximately one year before the confrontation leading to the victim's death. The defendant had stated to his brother that in that earlier encounter, the victim, accompanied by one friend who was white, had called the defendant, who was with three friends who were black, names, like "nigger this, nigger that," causing a fight to erupt, and in that fight the victim ultimately "got the best of" the defendant and his friends.

Trial commenced on January 2, 2007. Because the case involved the killing of a white man by a black man, individual voir dire was required. *Commonwealth* v. *Young*, 401 Mass. 390, 398 (1987), overruled in part on another ground in *Commonwealth* v. *Ramirez*, 407 Mass. 553, 555 (1990).

The juror in question was juror no. 47. At the time the judge questioned her individually, she was the only black juror remaining in the venire.[2] In response to the judge's question, the juror stated that she had read about the case in the newspaper, and had heard about it over the radio, but did not really remember any details. She indicated that she had not formed any opinions from what she read or heard that would prevent her from being fair, but also stated, "I really wish I wouldn't have to [serve as a juror on the case]. . . . You hear so much on TV with murders

---

[2]It appears that originally, the venire contained two black jurors, but one had been excused for unspecified reasons before juror no. 47 was questioned, and the defendant does not challenge the excusing of this potential juror.

and read so much in the paper, after a while it kind of stresses you out a little bit." Nonetheless, when the judge told her that "fair and open minded people [are needed] to hear these types of cases," the juror stated that she could decide the case based on the evidence and not on what she had read or heard. She also stated that she would have no difficulty being fair and impartial about the case, and could make judgments about the credibility of black and white witnesses fairly and without race being a factor.[3] The judge's last question to the juror confirmed that she worked at a school as a teacher's assistant. The judge then found the juror to be indifferent, and asked the juror to step outside for a moment.[4] The prosecutor thereupon asked the judge to ask further questions of the juror about her work as a teacher's assistant at a "school for handicapped and learning disabilities," and about the juror's level of stress, commenting, "[o]bviously, she doesn't want to do this because she gets stressed out. My fear is that stressed out factor and how stressed out does she get." The judge acquiesced in the prosecutor's request, and had the juror brought back for further questioning.

[3]The specific exchange on the race issues was as follows:

THE JUDGE: "Now, the deceased in this case was a white male and the defendant is a black male. Is there anything at all about those facts by themselves that would make it difficult or impossible for you to be a fair and impartial juror?" \

THE JUROR: "No, because you go by what is right and what is wrong."

THE JUDGE: "Okay. Would you tend to believe the testimony of a black witness over a white witness, or vice versa, just because of the race of the people involved?"

THE JUROR: "Not really, no."

THE JUDGE: "When you say 'not really,' what do you mean by that? Would it be a factor at all in who to believe?"

THE JUROR: "No, because you are not supposed to go on the witness stand on a jury and lie."

THE JUDGE: "I'm asking you, if you were a juror and you had a white witness saying one thing and a black witness saying something totally different, would you tend to believe one or the other because of the person's race?"

THE JUROR: "No, that shouldn't have nothing to do with it. No."

[4]In conducting the individual voir dire in this case, each time the judge found a prospective juror to be indifferent, he asked the juror to step outside momentarily and then asked the prosecutor and then the defense counsel whether they would exercise a peremptory challenge in relation to that juror.

In this second inquiry, in answer to the judge's questions about her job, the juror described the children with whom she worked at the school and what she did there,[5] and the judge then asked some questions about stress. The juror began by stating that she hated violence, but in response to a specific question whether dealing with stress would be a problem for her if she were a juror, she responded, "No. I just want to do the right thing, that's all. You know what I'm saying? I'd talk it over with the other jurors and see, should we put, prosecute this person? You know what I'm saying? We are sitting right there together. I wouldn't talk outside to them." The juror indicated that she had been a juror before, and described that prior case as one involving drugs and the sexual abuse of a child. The judge then asked whether serving as a juror on that case had been a stressful experience, and the following exchange took place:

> THE JUROR: "Well, I got myself together. But I felt sorry for the girl. If one of my —"

> THE JUDGE: "I don't want to talk about the case. I want to talk about the effect it had on you. Was it too stressful for you?"

> THE JUROR: "No. What I was saying now, I just felt sorry for the girl. We solved the case. He was guilty. He raped the child. He was bothering with the girl and the grandmother wasn't aware. He was living in the home. It was sick."

The judge again found the juror indifferent, and asked her once more to step outside. The prosecutor then exercised a peremptory challenge of the juror, and the defense counsel objected on the grounds that this was the single black juror in the pool, that a pattern of race-based challenges had been established, and that race might be an issue in the case. When the judge followed with a request to the prosecutor to respond, the prosecutor justified his challenge:

---

[5]The juror stated some of the children were "a little handicapped, a little off. You know what I mean? That's what the program is all about. Some of them are runaway students. Some of them, they don't know who their parents are. . . . You have to be that type of person, that you have to love kids, and I do."

THE PROSECUTOR: "Your Honor, well, just so the record is clear, I think that in the jury pool there was another African American female that was excused for other reasons."

THE JUDGE: "That's correct."

THE PROSECUTOR: "Your Honor, I would suggest to the Court that this is a proper challenge. It's not one that I make lightly because I have obviously anticipated this objection may be raised, which is why I asked the Court to make further inquiry. I do have some concerns with her responses in terms of sympathy for parties, understandably based upon her occupation. The fact that she made a reference to a prior case where she said she actually had sympathy for one of the parties, or one of the principals, I should say, in that case, causes me some concern in this respect. I think she even volunteered what her thinking process would be in terms if she would go back to the jury and ask, 'Should we prosecute this?' She didn't finish the sentence, but I think that causes me some hesitation as well as to the question is not, should she prosecute it, obviously, the question is whether or not the facts have been presented and the Commonwealth has satisfied its burden. I think those reasons, Your Honor, give the Commonwealth legitimate cause to exercise a peremptory challenge."

The judge responded to this statement as follows:

THE JUDGE: "Well, I think that I'm constrained to find because she is the only African American juror who was not excused earlier who has come forward. I think the law is that one can be a pattern. So I think I'm constrained to make that finding.

"However, I'm also satisfied that the Commonwealth's reasons for challenge is [*sic*] not race based. That there are race neutral reasons which the Commonwealth has articulated which justify the challenge. Therefore, the objection is overruled, but the defendant's rights are saved. She may be excused."

b. *Discussion.* "The use of peremptory challenges to exclude prospective jurors solely because of bias presumed to derive

from their membership in discrete community groups is prohibited both by art. 12 [of the Massachusetts Declaration of Rights], see *Commonwealth* v. *Soares*, 377 Mass. 461, 486-488, cert. denied, 444 U.S. 881 (1979) [*Soares*], and the equal protection clause [of the United States Constitution], see *Batson* v. *Kentucky*, 476 U.S. 79, 84-88 (1986)." *Commonwealth* v. *Harris*, 409 Mass. 461, 464 (1991).[6] There is a presumption that the exercise of a peremptory challenge is proper. That presumption may be rebutted, however, if it is shown that (1) there is a pattern of excluding members of a discrete group; and (2) it is likely that individuals are being excluded solely because of their membership in this group. See *Commonwealth* v. *Curtiss*, 424 Mass. 78, 80 (1997), and cases cited. A single peremptory challenge may be sufficient to make a prima facie showing that rebuts the presumption of proper use. *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997).

Following *Soares*, this court has laid out in many cases both the legal principles that apply and the specific procedural steps that must be followed by a trial judge (and counsel) when there is a claim that one party is using a peremptory challenge to exclude a member of a protected class. See, e.g., *Commonwealth* v. *Maldonado*, 439 Mass. 460, 463-466 (2003) (*Maldonado*), and cases cited. Specifically, our procedures direct that when an

---

[6]The defendant relies on arts. 1 and 12 of the Massachusetts Declaration of Rights, see *Commonwealth* v. *Fryar*, 414 Mass. 732, 735 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997). He claims also the right of the excluded juror to the equal protection of the law, under the Fourteenth Amendment to the United States Constitution and art. 1.

The United States Supreme Court has stated that a basis for denying peremptory challenges is the right of jurors "to participate in the administration of the law," *Strauder* v. *West Virginia*, 100 U.S. 303, 308 (1880), without regard to their race, gender, or any "group stereotypes." *J.E.B.* v. *Alabama ex rel. T.B.*, 511 U.S. 127, 140 (1994). The Court has concluded that classifications based on "impermissible stereotypes" violate the equal protection clause and that discrimination in jury selection harms the individual jurors "wrongfully excluded from participation in the judicial process" as well as the litigants and the community. See *id.* at 139-140 & n.11. See also *Strauder* v. *West Virginia*, *supra*. A defendant in a criminal case can raise the third-party equal protection claims of jurors. *Powers* v. *Ohio*, 499 U.S. 400, 415 (1991). Regardless of the perspective from which the problem is viewed, the result appears to be the same.

issue of improper use of a peremptory challenge is raised, "the trial judge should make a finding as to whether the requisite prima facie showing of impropriety has been made." *Commonwealth* v. *Burnett*, 418 Mass. 769, 771 (1994). When the defendant does make such a showing, the burden shifts to the Commonwealth to "provide a group-neutral reason for challenging the venireperson in question." *Id.* "The prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id.*, quoting *Batson* v. *Kentucky*, 476 U.S. 79, 98 n.20 (1986). Once the prosecutor states his reasons, the judge is obligated "to make an independent evaluation of the prosecutor's reasons and to determine specifically whether the explanation was bona fide or a pretext. . . . This latter step involves more than a rubber stamping of the proffered reasons; it requires a meaningful consideration whether the challenge has a substantive basis or is impermissibly linked to race." *Commonwealth* v. *Calderon*, 431 Mass. 21, 26 (2000). That is, the inquiry must determine whether the prosecutor's explanation is "belatedly contrived to avoid admitting facts of group discrimination." *Commonwealth* v. *Soares*, 377 Mass. at 491, quoting *People* v. *Wheeler*, 22 Cal. 3d 258, 282 (1978). In *Maldonado, supra* at 464-466, the court explained in more detail what is meant by "bona fide," and, of particular relevance here, also explained why a specific determination by the trial judge on this subject is essential:

> "The determination whether an explanation is 'bona fide' entails a critical evaluation of both the soundness of the proffered explanation and whether the explanation (no matter how 'sound' it might appear) is the actual motivating force behind the challenging party's decision. . . . In other words, the judge must decide whether the explanation is both 'adequate' and 'genuine.'. . .
>
> "An explanation is *adequate* if it is 'clear and reasonably specific," personal to the juror and not based on the juror's group affiliation' (in this case race) . . . and related to the particular case being tried. . . . Challenges based on subjective data such as a juror's looks or gestures, or a party's 'gut' feeling should rarely be accepted as adequate because such explanations can easily be used as pretexts

for discrimination. . . . An explanation is *genuine* if it is in fact the reason for the exercise of the challenge. The mere denial of an improper motive is inadequate to establish the genuineness of the explanation. . . .

"Once a trial judge has ruled that a prima facie showing of the improper use of a peremptory challenge has been made, the need for specific findings by the judge as to whether the explanation offered by the challenging party is both adequate and genuine becomes readily apparent. On appeal, the appellate court must be able to ascertain that the judge considered both the adequacy and the genuineness of the proffered explanation, and did not conflate the two into a simple consideration of whether the explanation was 'reasonable' or 'group neutral.' While the soundness of the proffered explanation may be a strong indicator of its genuineness, the two prongs of the analysis are not identical. The appellate court must also be able to ascertain that the consideration afforded to both adequacy and genuineness was itself adequate and proper. . . . Finally, while appellate courts may be equipped to some extent to assess the adequacy of an explanation, they are particularly ill-equipped to assess its genuineness. . . . For these important reasons, it is imperative that the record explicitly contain the judge's separate findings as to both adequacy and genuineness and, if necessary, an explanation of those findings." (Citations omitted. Emphases in original.)

The challenge here involved a black or African-American juror — the only eligible African-American juror in the venire — and race is one of the discrete groups to which the *Soares* principles apply. Once the prosecutor challenged the juror and defense counsel objected, the judge asked the prosecutor to justify the challenge. In doing so, the judge did not follow exactly the procedures called for in our cases, because he did not make an actual or explicit finding that a prima facie showing of impropriety had been made before requiring the prosecutor's justification; as the judge's statements quoted *supra* reflect, that explicit finding came after the explanation was given. Nevertheless, we view the judge's direct request for an explanation from the prosecutor as an implicit finding, at the

appropriate time, of a pattern of improper exclusion. See *Commonwealth* v. *Rodriguez*, 431 Mass. 804, 810 (2000); *Commonwealth* v. *Calderon*, 431 Mass. 21, 25 (2000); *Commonwealth* v. *Curtiss*, 424 Mass. 78, 81-82 (1997).

Once the judge determined a pattern had been shown, he was obligated to make a specific determination or specific findings, in some form, that the prosecutor's proffered justification was both adequate and genuine. *Maldonado*, 439 Mass. at 464-466. The necessary determination must be clear from the record. The dissent suggests that the court today is going beyond our prior cases, and demanding that trial judges provide explicit subsidiary findings about adequacy and genuineness "such as they might furnish on a motion to suppress or in a nonjury trial." *Post* at 232. We impose no such requirement. We simply adhere to what we stated in *Maldonado*, *supra*. While it obviously would provide greater guidance to the parties and a reviewing court when a judge expressly states his or her findings about the sufficiency and genuineness of a proffered justification, we do not intend to exalt form over substance. The point that *Maldonado* makes, and we repeat, is that in this sensitive area, it is necessary for an appellate court to be able to "ascertain that the judge considered both the adequacy and the genuineness of [counsel's] proffered explanation, and did not conflate the two into a simple consideration of whether the explanation was 'reasonable' or 'group neutral.' " *Maldonado*, 439 Mass. at 465. Clearly, the ability of the appellate court to do so in a specific case will depend on what the record reveals — in terms of the reasons stated by the counsel or party seeking to exercise the peremptory challenge; the interchange, if any, between the judge and counsel about those reasons; and the statements (whether or not in the form of findings), if any, the judge made in accepting or rejecting the peremptory challenge. We have upheld decisions to approve and to deny peremptory challenges even without explicit findings when the record as a whole permits us to do so. See, e.g., *Commonwealth* v. *Garrey*, 436 Mass. 422, 430 (2002) (upholding approval of peremptory challenge despite apparent lack of specific finding that proffered reason was bona fide because record showed that "judge gave the matter 'meaningful consideration' "); *Com-*

*wealth* v. *Curtiss*, 424 Mass. at 80, 82 & n.4 (upholding denial of peremptory challenge despite lack of explicit finding that defendant's reasons were "not . . . bona fide" or "a sham" because "the judge's statements taken as a whole support such a determination"). See also *Commonwealth* v. *Fruchtman*, 418 Mass. 8, 10-12 & nn. 2-6, cert. denied, 513 U.S. 951 (1994) (upholding denial of peremptory challenges on basis of judge's "conclu[sion] that the defendant did not have legitimate gender-neutral reasons" for his challenges to some, but not all, of the women he challenged). In some cases, however, the record will not permit the appellate court to ascertain that the judge gave "meaningful consideration," *Commonwealth* v. *Calderon*, 431 Mass. at 26, to adequacy and genuineness unless the judge also includes "an explanation of those findings." *Maldonado, supra* at 466.

This is one of those cases. The judge's findings concerning the prosecutor's stated reasons for his challenge, fairly read, do not contain, implicitly or otherwise, the kind of independent evaluation and determination of the adequacy and genuineness of the prosecutor's reasons that *Maldonado* and our earlier cases call for. See, e.g., *Commonwealth* v. *Calderon*, 431 Mass. at 26; *Commonwealth* v. *Burnett*, 418 Mass. 769, 771-772 (1994). Rather, the findings simply state conclusions: that the challenge was "not race based," and that "there [were] race neutral reasons" for it. Furthermore, in characterizing the prosecutor's reasons as "race neutral" the judge never clarified to which of the prosecutor's several proffered reasons he was referring — a significant problem in light of the vague and in one respect illogical nature of the prosecutor's statement (a point later discussed).[7] In the circumstances, there is little substantive distinction between this case and those cases where the judges allowed

_____

[7]The dissent states that the judge "implicitly decided the issues of adequacy and genuineness by stating that the challenge was race neutral," and that we generally defer to such a decision by the trial judge and should in this case. *Post* at 231. As has been stated, an implicit determination of these issues may be sufficient in a particular case, depending on what the record shows. Here, however, the reasons that the prosecutor stated were at best unclear, and in response, the judge did not ask or say anything else beyond his statement that he was satisfied the Commonwealth's challenge was not "race based," and there were "race neutral" reasons for it. The judge's statements represent the type of conclusory conflating that *Maldonado* warned against. *Maldonado,*

a challenge without making any findings at all. See, e.g., *Maldonado*, 439 Mass. at 466; *Commonwealth* v. *Calderon, supra* at 26-27; *Commonwealth* v. *Burnett, supra* at 772. Accordingly, the court is not in a position to give deference to the judge's findings.

Where the necessary findings by the judge are absent, as an appellate court we must consider more directly the adequacy and genuineness of the prosecutor's stated reasons, rather than confine ourselves to a review of the judge's findings. See, e.g., *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. 1, 5, *S.C.*, 418 Mass. 769, 772 (1994). The prosecutor here first argued his concern that the juror was likely to have sympathy "for parties," based on the juror's indication that she had sympathy for one of the "principals" in a prior case on which she had served as a juror. The Commonwealth suggests that this statement represented an expression of legitimate concern by the prosecutor that the juror would align herself with the defendant. The present case also had a victim — Anthony Hopkins — and it is illogical to conclude that a person who indicates that she felt sympathy for the victim in a prior criminal case is likely to identify or align her sympathies with the defendant in this case. Cf. *Commonwealth* v. *Calderon*, 431 Mass. at 27 ("Common sense suggests that the prosecutor may not have been acting fairly when, after questioning one juror's antipathy to the police, he challenged [the one black juror in the venire] on the basis that she might be prejudiced *in favor* of the police" [emphasis in original]).[8]

The prosecutor went on to reference the juror's statement that

439 Mass. at 465. Put another way, on the present record, we find no basis to infer, from the judge's bare conclusion of race neutrality, that the judge made this finding based on a specific and independent evaluation of the adequacy and genuineness of the prosecutor's reasons.

[8]The dissent agrees with the Commonwealth that the prosecutor's statement about sympathy for "parties" represented a legitimate and genuine articulation of concern that the juror would be sympathetic towards the defendant, and further opines that "the judge could reasonably find that the prosecutor's concern that the juror might sympathize with the defendant was not pretext." *Post* at 234. The dissent elaborates on the point, positing that the "prosecutor apparently sought jurors who would respond to the evidence on an intellectual rather than an emotional level," and, in the dissent's view, the juror "repeatedly focused on her emotions and sympathetic responses." *Id.* In a related vein, the dissent concludes that "the prosecutor genuinely could be concerned that

if she were a juror on the present case, she would talk over the case with the other jurors, and consider together with them whether they should "prosecute" the defendant. The prosecutor did not explain precisely what he thought this statement by the juror meant, but he seemed to suggest either that it is a further expression of sympathy by the juror, or that it signifies the juror would not be likely to carry out her appropriate responsibility of deciding whether the Commonwealth had met its burden of proving its case. It appears reasonably clear, however, that the juror either made a slip of the tongue or was unfamiliar with criminal law terms, and that the word she meant to use was "convict" — in other words, she was saying that she would discuss the case with her fellow jurors, and consider with them whether they should "convict" the defendant. The juror's slip of the tongue, or her lack of working knowledge of the vocabulary of criminal law, simply does not qualify as a valid, race-neutral basis on which to exercise a peremptory challenge here.

The prosecutor also made passing reference to the juror's "occupation." We have held that a juror's occupation may be a sufficient and valid basis on which to justify the exercise of a peremptory challenge. See, e.g., *Commonwealth* v. *Garrey*, 436 Mass. 422, 429 (2002). Nonetheless, where a question has been validly raised about the propriety of a party's use of a peremptory challenge, the claim of occupation as legitimate disqualifier should be carefully scrutinized. See, e.g., *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. at 5 (evaluating, and rejecting, prosecutor's challenge based on black juror's position as youth services program director). This was not done in the present case.

the defendant might appear to this juror as a victim, and the judge could so find." *Id.* at 234. The problem with this reasoning is that it is premised on a series of assumptions about what the prosecutor *could* have been thinking, and what the judge *could* have determined — assumptions that simply lack factual support in the prosecutor's stated reasons for his challenge or the judge's statement accepting the challenge (both set out in their entirety in the text, *supra* at 217). Moreover, and more significantly, it is not up to a reviewing court to conjure up a set of possible, theoretically permissible, reasons to support an unexplained or insufficiently explained peremptory challenge, the bona fides of which have been called into question. Rather, the responsibility lies with the justifying party (or the party's lawyer) and then the judge. The defendant's right to a jury chosen in a manner that is free from discrimination deserves no less.

The juror gave no answers to the questions posed to her that would suggest her occupation was going to interfere with her expressed desire to "do the right thing" or that would detract from her indication that she had successfully served as a juror on at least one criminal case in the past.[9]

The issue of race plays an important role in the assessment of the jury selection process in this case. Our decisions have specified that in assessing whether a challenged peremptory challenge has been improperly exercised, significant factors to consider are "not only the numbers and percentage of group members excluded, but also common group membership of the defendant and the jurors excluded, and of the victim and the remaining jurors." *Commonwealth* v. *Garrey*, 436 Mass. at 428, quoting *Commonwealth* v. *Robinson*, 382 Mass. 189, 195 (1981). See *Commonwealth* v. *Fryar*, 414 Mass. 732, 741 (1993) (constitutional right to jury selected by nondiscriminatory criteria belongs to every defendant, but "in some cases the racial composition of the jury necessarily will be of greater concern," and was in that case, involving young black defendant accused of murdering white college student). Like the *Fryar* case, this case had a single black juror in the venire and involved a serious criminal charge (murder) with a black defendant and a white victim. In these circumstances, the prosecutor's stated reasons for his challenge, considered separately or together, do not satisfy the Commonwealth's burden "of countering the prima facie finding of improper use by proffering a 'bona fide,' race-neutral explanation for its peremptory challenge." *Commonwealth* v. *Maldonado*, 439 Mass. 460, 467 (2003).

This court has frequently articulated the procedures to be followed when there is a question raised about the improper use of a peremptory challenge, and has also emphasized the need for independent and specific inquiries to be conducted by judges

---

[9]On appeal, the Commonwealth also argues that the challenge was justified by the fact that the juror might not have been able to handle the "stresses" of a trial, and the dissent cites to a series of comments by the juror concerning stress. *Post* at 233-234. Although the prosecutor initially sought further questioning of the juror on the issue of stress, ultimately he did not state stress as a reason in support of his challenge, and indeed, the juror indicated in response to at least three separate questions by the judge that stress would not interfere with her ability to serve as a juror.

who are put in the position of deciding the bona fides of a party's exercise of such a challenge; *Maldonado, supra,* which contains perhaps the most detailed discussion of this issue, was not entering an uncharted territory. There is no question that the jury selection process is often pressured and difficult, and we have no reason to doubt the desire and good faith attempts of the judge and all the attorneys in this case to conduct the process in a manner that was fair to all concerned. However, the defendant has an unquestionable right to be tried before a jury that has been selected in a manner that is free from discrimination, and this right was not adequately protected in the present case.[10] The defendant's conviction must be reversed.

2. *Other issues.* We discuss the issues raised by the defendant that may arise at a new trial.

a. *Instruction on self-defense.* The defendant claims that he was entitled to an instruction on self-defense and that the judge erroneously refused to instruct the jury on this theory. When deadly force is used, such as in this case, the deadly force standard is applied. See *Commonwealth* v. *Walker,* 443 Mass. 213, 216 (2005). "In order to create a right to defend oneself with a dangerous weapon likely to cause serious injury or death, it must appear that the person using the weapon had a reasonable apprehension of great bodily harm and a reasonable belief that no other means would suffice to prevent such harm." *Commonwealth* v. *Pike,* 428 Mass. 393, 396 (1998), quoting *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955). Moreover, the privilege to use self-defense arises only in circumstances in which the defendant uses all proper means to avoid physical combat. *Commonwealth* v. *Niemic,* 427 Mass. 718, 722 (1998). A self-defense instruction is not required unless there is some evidence that the defendant availed himself of all means, proper and reasonable in the circumstances, of retreating from the

___

[10]Chief Justice Marshall agrees with the court's opinion in this case, and Justices Greaney and Spina have joined the dissenting opinion. These three Justices, however, wish to reaffirm the views expressed by them in their concurring opinion in *Commonwealth* v. *Maldonado,* 439 Mass. 460, 468 (2003). There is no need at this time to explain the basis, or bases, which would be relied on to eliminate, or limit, the use of peremptory challenges in criminal cases. An explanation is more appropriately given when an appeal formally requests general relief against the use of peremptory challenges in criminal cases. No such request has been made in this case.

conflict before resorting to the use of deadly force. "This rule does not impose an absolute duty to retreat regardless of personal safety considerations; an individual need not place himself in danger nor use every means of escape short of death before resorting to self-defense. . . . He must, however, use every reasonable avenue of escape available to him" (citations omitted). *Commonwealth* v. *Pike, supra* at 398. Although we resolve all reasonable inferences in favor of the defendant, as we must, see *id.* at 395, there was no such evidence in this case.

The defendant did not testify; thus we examine his statements to the police (which were in evidence) and any other evidence relevant to the feasibility of escape. In the defendant's statement to the police, he said that, as he was about ten feet from the victim on the porch, the victim yelled, "I'm going to stab you niggers," and that the victim jumped or "skipped" off the porch and "came at" the defendant and the defendant's friend, Brandon Johnson. The defendant "figured that [the victim] had a knife, too, because he was going to stab us." At that point, the defendant and Johnson talked about what to do, and Johnson gave the defendant a knife. Viewing this evidence in the light most favorable to the defendant, after the victim's threat to stab him, the defendant had the opportunity to go over to Johnson, get the knife, and then engage in combat with the victim. Whether Johnson was ten feet away from the victim, or somewhat closer, all these events transpired outdoors in front of the victim's house and apparently in the vicinity of a public street. See *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000). Nothing indicated that his escape was impeded in any way. Because there was no evidence of an attempt to avoid further physical combat or of the defendant's inability to retreat, no self-defense instruction was required. See *Commonwealth* v. *Pike*, 428 Mass. at 399.

b. *Exclusion of evidence of the victim's prior attack on a black male.* In *Commonwealth* v. *Adjutant*, 443 Mass. 649, 664 (2005), we held that "where the identity of the first aggressor is in dispute and the victim has a history of violence . . . the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, to support the defendant's claim of self-defense." At trial, defense counsel moved to introduce evidence that the

victim had assaulted a black male hours before his confrontation with the defendant, also a black male. The defendant supported his proffer with police reports and witness statements concerning the incident and argued that our recent decision in the *Adjutant* case permitted the introduction of such evidence. There was no suggestion here that the defendant knew of these acts by the victim before the stabbing. The judge ruled correctly that, because the evidence did not raise the issue of self-defense, as discussed above, the *Adjutant* decision was inapplicable, and he declined to admit the evidence of the prior violence. Our decision in the *Adjutant* case is specifically limited to situations where the defendant claims self-defense and the identity of the first aggressor is in dispute.

The judge, however, did instruct the jury on voluntary manslaughter based on provocation or heat of passion induced by sudden combat. He did so because, viewing the evidence in the light most favorable to the defendant, the jury could find that the victim acted suddenly, jumping off the porch at the defendant and Johnson, that the defendant lost his self-control in the heat of passion, and that sufficient time did not pass for the defendant's temper to subside. The judge also instructed that it was the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act on reasonable provocation. See *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998).

On appeal, the defendant contends that we should extend our holding in the *Adjutant* case to the present situation. The argument is that evidence bearing on the issue who was the aggressor is "equally applicable to a determination . . . whether the putative victim instigated sudden and violent combat which would cause a reasonable person to be provoked to heat of passion." We acknowledge that *Adjutant*-type evidence has been accepted in this area by some other courts. See, e.g., *People* v. *Foster*, 81 Ill. App. 3d 915, 923-924 (1980); *People* v. *Burks*, 387 Mich. 393, 395 (1972). Based on the short time in which we have had experience with the application of the *Adjutant* rule, and the lack of opportunity to examine its impact, we are not prepared to extend the rule at this time.

    c. *Closing argument.* The defendant maintains that the prosecutor argued improperly by "exploit[ing]" the lack of *Adjutant*

evidence that the prosecutor had successfully excluded from evidence. The claim is that evidence concerning an allegedly unrelated, racial attack by the victim that the defendant asserted had occurred earlier on the same night as the victim's death — the defendant's proffered *Adjutant* evidence — was kept from the jury, but the prosecutor then exploited this absence of racial animus evidence by arguing to the jury that the defendant was not credible when he stated the victim yelled a racial insult at the defendant just before the stabbing incident began. We have carefully examined the record, and conclude that the prosecutor's argument was grounded in the evidence actually admitted at trial, and represented a fair response to the closing argument made by the defendant's counsel, which had emphasized the racial slur recounted by the defendant in his statement to the police.[11]

3. *Conclusion.* The defendant's conviction is reversed, the verdict set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*

IRELAND, J. (concurring). In *Commonwealth* v. *Adjutant*, 443 Mass. 649, 664 (2005), we held that a trial judge has discretion to admit evidence of "specific acts of prior violent conduct" that a victim allegedly initiated, where the defendant claims self-defense and the identity of the first aggressor is disputed. In this case, the court was asked to extend the *Adjutant* rule to situations where an instruction on voluntary manslaughter is appropriate, and the defendant is claiming that he acted in the heat of passion due to reasonable provocation or sudden combat. The court declines the defendant's invitation, stating that there has been too little time to consider the impact of the *Adjutant* rule on self-defense cases. *Ante* at 228. I write separately because I think that the court should have considered whether the *Adjutant* rule should be extended.

In his statement to police, the defendant claimed that the victim yelled, "You stupid niggers, I'm going to stab you," and

---

[11]The defendant did not object to this portion of the closing argument.

"skipped off his porch" and "came at" him and his friend. He also told police that he knew the victim to harbor racist attitudes. The defendant proffered evidence through affidavits of counsel, police reports, and witness statements that, approximately two hours before his altercation with the defendant, the victim, who was white, and two to three other companions were involved in an incident with another black male. The black male went to meet a young woman near a middle school. The victim, wearing a black hooded sweatshirt and black pants, ran at the black male yelling, "I'm going to kill you nigger." The other men then came out of the bushes saying, "Get him." The black male ran until he came to a house where a woman allowed him to telephone the police. In the meantime, the men caused extensive damage to the car the black male had been driving.[1]

It seems to me that, at a new trial, this incident would be relevant to the jury's assessment of the credibility of the defendant's claim that the victim came at him, threatened him, and used a racial slur. If the jury believe the defendant's version of events, they could find him guilty of voluntary manslaughter (rather than murder in the second degree as the jury did here). Moreover, when the defense counsel emphasized the victim's statement in closing argument, the absence of this evidence allowed the prosecutor to argue that the defendant was inventing the victim's threatening and racially charged statement.

These circumstances persuade me that the court should have undertaken a full analysis of the merits of extending the *Adjutant* rule to this case, instead of dismissing it as premature.

COWIN, J. (dissenting, with whom Greaney and Spina, JJ., join). I respectfully dissent because I believe the trial judge's finding that the Commonwealth's peremptory challenge of a black juror was race neutral is supported by the record. "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we

---

[1]Without addressing its admissibility, I note that, in her statement to police about this attack, one of the witnesses stated that, earlier in the evening the victim and two other men "were talking about being skin heads and how they hate niggers. They were saying that they kill people for each other, and that they got each other's backs."

do not substitute our judgment for his if there is support for it on the record." *Commonwealth* v. *Curtiss*, 424 Mass. 78, 82 (1997), quoting *Commonwealth* v. *Fruchtman*, 418 Mass. 8, 15, cert. denied, 513 U.S. 951 (1994).

The court relies in large part on *Commonwealth* v. *Maldonado*, 439 Mass. 460, 463-466 (2003) (*Maldonado*), to conclude that the findings of the judge in the present case were insufficiently specific to warrant deference. The judge here, in approving of the prosecutor's challenge, found that the challenge was "not race based," and that "there [were] race neutral reasons" for it. The court believes that these findings do not contain, "implicitly or otherwise, the kind of independent evaluation and determination of the adequacy and genuineness of the prosecutor's reasons that *Maldonado* and our earlier cases call for," *ante* at 222. I disagree, as I believe that the judge's findings were sufficient to satisfy the requirements established in *Maldonado* and our earlier cases.

We have routinely upheld trial court determinations on challenges pursuant to *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979) (*Soares*), notwithstanding the absence of explicit findings on the subject. See *Commonwealth* v. *Rodriguez*, 431 Mass. 804, 810 (2000); *Commonwealth* v. *Curtiss*, *supra* at 80, 82 & n.4; *Commonwealth* v. *Fruchtman*, *supra* at 8, 10-17 nn. 2-6. The court itself cites these cases. See *ante* at 222. Here, the judge implicitly decided the issues of adequacy and genuineness by stating that the challenge was race neutral. The question of adequacy, that is, whether the stated reasons are, if bona fide, sufficient to justify the challenge, calls for a ruling of law that an appellate court reviews without deference to the judge's decision. Adequacy does not implicate the genuineness of the challenge. "Adequacy" only invites inquiry whether the proffered reason is sufficient to sustain the challenge. The proffered reason is either adequate as a matter of law or it is not, and an appellate court can make that decision based on the challenger's statement of reasons as set forth in the record.

The question of genuineness, that is, whether the prosecutor's stated reasons are the real reasons or are instead a pretext, is a question of fact, and more specifically, a question of credibility. By approving of the peremptory challenge, the judge here found

the prosecutor's stated reasons to be credible. To this conclusion we defer to the trial judge unless his determination is clearly erroneous. As *Maldonado* states, "while appellate courts may be equipped to some extent to assess the adequacy of an explanation, they are particularly ill-equipped to assess its genuineness." *Id.* at 466.

I have never understood the *Maldonado* case to require the specificity of explanation that the court now demands. We took pains to point out that a decision regarding the validity of a peremptory challenge had two aspects: (1) a determination that the challenging party had articulated a legally adequate reason for the challenge; and (2) a finding that the articulated reason was genuine, i.e., that the reason stated was in fact that party's real reason for exercising the challenge, and not merely a pretext designed to conceal an underlying, unlawful motivation.

The point of our analysis in *Maldonado* was to remind trial judges that a *Soares* analysis requires more than merely passive acquiescence to a party's statement of valid reasons for a challenge; it obligates the judge to decide whether that statement honestly sets forth the party's purpose. In this regard, *Maldonado* demands "separate findings as to both adequacy and genuineness." *Id.* at 466. That means, in my view, that a judge must consider each factor and must decide, either expressly or implicitly, that each factor is, or is not, satisfied. I am confident that, until today, few if any trial judges believed that they were required to provide specific subsidiary findings on these subjects such as they might furnish on a motion to suppress or in a nonjury trial. Indeed, *Maldonado* says as much where it calls for "findings as to both adequacy and genuineness and, *if necessary*, an explanation of these findings" (emphasis supplied). *Id.*

The court attempts to respond to my proposition by denying that it seeks to impose a requirement that there be explicit subsidiary findings with respect to *Soares* justifications. Elsewhere, however, the court refers to "the statements (whether or not in the form of findings), if any, the judge made in accepting or rejecting the peremptory challenge." *Ante* at 221. The court also comments that in some cases the appellate court will be unable to assess the judge's determination "unless the judge also includes 'an explanation of those findings.' " *Ante* at 221, quoting

*Maldonado, supra.* If these are meaningful distinctions here regarding what is expected of the judge in support of his action, they elude me, and I daresay will confuse judges and trial lawyers as well.

Subsequently, the court remarks, *ante* at 222, that "the judge never clarified to which of the prosecutor's several proffered reasons he was referring." If this is an effort to mitigate the opacity of the court's previous analysis, it fails. The prosecutor's reasons are spread verbatim on the record, and I remain unpersuaded that anything meaningful is gained by requiring that the trial judge repeat them. If the court in reviewing the record genuinely believes that the judge's credibility determination is clearly erroneous, so be it. But I would hope that such a decision would be based on more than simply the absence of some "magic words" that are not even clearly identified by the court's opinion.

With that in mind, I move to my view of the record. Here, the record provides sufficient evidence to support both a conclusion of adequacy as a matter of law and a finding of genuineness. The judge could reasonably determine that the prosecutor's challenge of the black woman juror was not race based, but instead resulted from the juror's statements of sympathy for one of the parties in a prior trial as well as her occupation. In response to questions at voir dire, the juror stated that she "hope[d] nobody really got killed badly" and that "[i]t's easy to get stressed out over stuff like that." The judge inquired whether the juror could decide the case based on what she heard in the court room rather than what she read in the newspaper; she responded, "Maybe, but I really wish I wouldn't have to do it. I don't know. You know. I just wish I didn't have to do it. You know." When asked why she "wish[ed] that," she answered, "You hear so much on TV with murders and read so much in the paper, after a while it kind of stresses you out a little bit. You know, what I'm trying to say?" Further questioning indicated that she believed she could handle the stress of being a juror and be fair and impartial. The juror also volunteered that she had served as a juror before. The judge asked if that had been a stressful experience; she replied, "Well, I got myself together. But I felt sorry for the girl." The judge admonished the juror

not to talk about the previous case, but to tell him only whether it was "too stressful for you." She stated, "No . . . I just felt sorry for the girl. We solved the case. He was guilty. He raped the child. He was bothering with the girl and the grandmother wasn't aware. He was living in the home. It was sick." The juror also stated she worked with emotionally challenged and disadvantaged children and in her type of work, "you have to love kids, and I do."

Given the juror's responses at voir dire, the judge could reasonably find that the prosecutor's concern that the juror might sympathize with the defendant was not pretext. The record permits a finding that the Commonwealth's case against the defendant was strong, and the prosecutor apparently sought jurors who would respond to the evidence on an intellectual rather than an emotional level. The juror here, however, repeatedly focused on her emotions and sympathetic responses to a variety of situations, from a prior court experience to her everyday work. See *Commonwealth* v. *Garrey*, 436 Mass. 422, 429 (2002) (juror's occupation may be sufficient to rebut prima facie showing that peremptory challenge improperly exercised). See also *Commonwealth* v. *Green*, 420 Mass. 771, 774, 778 (1995) (defense counsel's explanation that juror's father and brother were police officers adequate to justify peremptory challenge); *United States* v. *Maxwell*, 160 F.3d 1071, 1075 (6th Cir. 1998) (permissible for prosecutor to challenge juror because she was guidance counsellor, and, in his experience, guidance counsellors tend to be overly sympathetic with defendants).

Although the juror's expression of sympathy was for the victim in the prior case, the point is that the defendant at the present trial was likely to portray himself as a victim. The defendant presented evidence of the victim's racial slurs and in general attempted to raise a self-defense claim. The prosecutor genuinely could be concerned that the defendant might appear to this juror as a victim, and the judge could so find. While such a finding was not compelled, the judge could permissibly conclude that the prosecutor's challenge was based at least in part on his concern that the juror might become emotionally involved to an extent that might distract her from the evidence against the defendant and interfere with impartial consideration. These reasons suffice to support the decision of the judge that

the exercise of the peremptory challenge was made for reasons personal to the juror, and not because of the racial group to which she belongs.

The court insists that I speculate as to the reasoning of the prosecutor and the judge. See *ante* at 223 n.8. I have not speculated, but have merely engaged in the process we typically use to review questions regarding the sufficiency of the evidence. I see nothing in the record that shows the trial judge's implicit belief in the genuineness of the prosecutor's stated reasons to be clearly erroneous. The record also supports, as a matter of law, that the stated reasons are reasonable ones, and sufficient to justify the removal of this particular juror.

I do not denigrate the principles that we seek to vindicate by a continuing insistence that the *Soares* protocol be observed. What I do reject is the conclusion that the defense of these principles requires that we ignore the decision of a highly experienced trial judge who plainly and correctly, albeit implicitly, ruled that the proffered explanation was legally adequate, and who permissibly found that the explanation was credible. We choose instead to insinuate ourselves unnecessarily into the process, making credibility determinations on a written record years and miles removed from the trial. Neither *Soares* nor *Maldonado* requires this.[1]

---

[1]Three Justices question the continued use of peremptory challenges notwithstanding the fact that neither party in this case has sought any relief in this respect. *Ante* at 226 n.10. No other State or Federal court has abandoned the use of peremptory challenges. See, e.g., Note, Rethinking Limitations on Peremptory Challenge, 85 Colum. L. Rev. 1357, 1359-1360 (1985). In this Commonwealth, peremptory challenges are a product of statute. See G. L. c. 234, § 29. Therefore, the only way this court could lawfully eliminate such challenges is by concluding that the statute is unconstitutional. The three Justices who advocate the abandonment of peremptory challenges have not explained why the statute is unconstitutional. (Justices Greaney and Spina do not join in this footnote.)