NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1433

COMMONWEALTH

vs.

TERRELLE ROSARIO-THOMAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was convicted of five charges, including firearms offenses and possession with the intent to distribute both class A and class B substances.[1]  On appeal, the defendant, who is Black, argues that the trial judge erred in allowing the Commonwealth's peremptory challenge of the only Black person initially chosen to be on the jury, juror 38.  Because we conclude that the record establishes an adequate basis for the challenge, and that the challenge was genuine, we affirm.

---

[1] The defendant's motion for a required finding of not guilty was allowed with respect to a sixth charge.

Discussion.  1.  Batson-Soares test.  "The Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights prohibit a party from exercising peremptory challenges on the basis of race, sex, or sexual orientation, among other groupings."  Commonwealth v. Kozubal, 488 Mass. 575, 580 (2021).  Although the exercise of a peremptory challenge is presumptively proper, see Commonwealth v. Lacoy, 90 Mass. App. Ct. 427, 431 (2016), quoting Commonwealth v. Benoit, 452 Mass. 212, 218 (2008), where there is a question of whether a "challenge is based impermissibly on a juror's membership in a protected group, . . . . [a] three-step burden shifting analysis [Batson-Soares test] is applied to determine whether a peremptory strike of a potential juror is proper."  Kozubal, supra.  See Batson v. Kentucky, 476 U.S. 79, 94-95 (1986); Commonwealth v. Soares, 377 Mass. 461, 489-491, cert. denied, 444 U.S. 881 (1979), overruled in part by Commonwealth v. Sanchez, 485 Mass. 491, 511 (2020).

"First, to rebut the presumption that the peremptory challenge is proper, the [opponent of the peremptory challenge] must make out a prima facie case that it was impermissibly based on race or other protected status by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose" (quotation and citation omitted).  Kozubal, 488 Mass. at 580.  Second, if the opponent makes the

2

required initial showing, "the burden shifts to the party exercising the challenge to provide a group-neutral explanation for it."  Id. at 580, quoting Commonwealth v. Jackson, 486 Mass. 763, 768 (2021).  "Third, 'the judge must then determine whether the explanation is both adequate and genuine.'"  Kozubal, supra at 580-581, quoting Jackson, supra.

> "An explanation is adequate if it is 'clear and reasonably specific,' 'personal to the juror and not based on the juror's group affiliation' (in this case race) . . . and related to the particular case being tried. . . . Challenges based on subjective data such as a juror's looks or gestures, or a party's 'gut' feeling should rarely be accepted as adequate because such explanations can easily be used as pretexts for discrimination. . . .  An explanation is genuine if it is in fact the reason for the exercise of the challenge.  The mere denial of an improper motive is inadequate to establish the genuineness of the explanation."

Benoit, 452 Mass. at 219-220, quoting Commonwealth v. Maldonado, 439 Mass. 460, 464-465 (2003).

At the third step, the judge is obligated to make specific findings.  Benoit, 452 Mass. at 220.  While the judge need not use a particular form of words in making those findings, Commonwealth v. Rodriguez, 431 Mass. 804, 810 (2000), the findings must be sufficient to enable an "appellate court . . . to ascertain that the judge considered both the adequacy and the genuineness of [counsel's] proffered explanation, and did not conflate the two into a simple consideration of whether the

3

explanation was reasonable or group neutral" (quotation and citation omitted). Benoit, supra.

2. Standard of review. Ordinarily, our review at each step of the Batson-Soares analysis is for an abuse of the judge's discretion. Jackson, 486 Mass. at 768. Where, as here, however, we conclude that the judge failed "to make a specific determination or specific findings, in some form" sufficient to enable us to review the judge's assessment of both the adequacy and genuineness of an attorney's proffered reasons for a peremptory challenge, we review the third step de novo. Commonwealth v. Gonzalez, 99 Mass. App. Ct. 161, 166 (2021), quoting Benoit, 452 Mass. at 221.

3. De novo review. Here, the prosecutor effectively (and correctly) conceded the first step, recognizing that by striking the only Black juror on the panel, she had set up a prima facie case that "[the challenge] was impermissibly based on race." Kozubal, 488 Mass. at 580, quoting Jackson, 486 Mass. at 768. Cf. Gonzales, 99 Mass. App. Ct. at 165-166, quoting Commonwealth v. Mason, 485 Mass. 520, 530 (2020) ("because the judge asked for a reason . . ., the first phase of the analysis, i.e., rebutting the presumption that the peremptory challenge was proper, implicitly was satisfied").

We discern no abuse of discretion in the judge's implicit determination that at the second step, the prosecutor met the

4

Commonwealth's burden to provide a "race-neutral" explanation for her challenge by explaining her concerns about juror 38's "empathy" for the defendant and the juror's reluctance to participate as a juror in a decision that "impacted" "someone's life."

The third step of the analysis requires us to determine whether the Commonwealth's explanation was "both adequate and genuine." Kozubal, 488 Mass. at 581, quoting Jackson, 486 Mass. at 768. As we have explained, we review the Commonwealth's showing at this stage de novo.

On voir dire, juror 38 answered affirmatively when the judge asked, "Is there anything about the charges in this case that make it difficult for you to be fair and impartial?" Called to sidebar, juror 38 explained her answer by saying, among other things, that she was "stuck in the middle . . . because [she knew] people who have been in that place before and . . . [she] also [knew] what it looks like when you choose not to take that direction." She explained that the "emotional piece" of her concern about serving as a juror on the defendant's case involved her belief that "reflecting . . . would be tough for [her] after the fact" because "when this is over[,] someone's life is impacted." From these answers, the prosecutor concluded that juror 38 "had some empathy toward someone in the defendant's situation," and that "[the juror]

5

would struggle with the decision of conviction . . . [as] something she'd have to carry with her."  These were fair inferences from the juror's explanation of the reasons for her concerns about her ability to sit as a juror on the defendant's case.  The concerns the prosecutor raised were "clear," "reasonably specific," and "personal to the juror and not based on the juror's group affiliation."  Kozubal, supra, quoting Maldonado, 439 Mass. at 464-465.  Accordingly, the reasons were "adequate."

We do not agree with the defendant's charge that the prosecutor's explanation was "rife with inaccuracies."  It is apparent from a fair reading of the transcript that the prosecutor's conclusions, even where they were characterized as the juror's "statements," were either paraphrasings of the salient points of the juror's voir dire exchanges with the judge, or summaries of the prosecutor's inferences drawn from the juror's answers.  There is nothing to suggest that the prosecutor was misstating what the juror actually said.

We likewise discern nothing "illogical" about the prosecutor's proffered reasons for the challenge.  Contrast Benoit, 452 Mass. at 223 ("it is illogical to conclude that a person who indicates that she felt sympathy for the victim in a prior criminal case is likely to identify or align her sympathies with the defendant"); Commonwealth v. Calderon, 431

Mass. 21, 27 (2000) ("Common sense suggests that the prosecutor may not have been acting fairly when, after questioning one juror's antipathy to the police, he challenged [a different juror] on the basis that she might be prejudiced in favor of the police"); Maldonado, 439 Mass. at 462, 467 ("no apparent reason" why fifty-five year old childless person would be less inclined to credit police than person of similar age who had children); Commonwealth v. Burnett, 36 Mass. App. Ct. 1, 5, S.C., 418 Mass. 769 (1994) (record lacked support for "prosecutor's belief regarding the unexplained propensities of those who work with youth" as basis for peremptory challenge to Black juror who worked as youth services program director).

Contrary to the defendant's contention, the prosecutor did not argue that juror 38 was biased against conviction because she grew up in Springfield, Massachusetts, or Kingston, Jamaica. Our review of the transcript leads us to conclude that the prosecutor's reference to the juror's having lived in Springfield and Kingston was little more than an attempt to orient herself and the judge to juror 38's answers to a voir dire that had happened earlier in the day.[2] Given our

_____

[2] Between the time of the voir dire of that juror and the Commonwealth's opportunity to exercise its peremptory challenges to the seated jurors, the judge had made individual inquiry of eleven other jurors, and court had taken a midday recess. Given the break in time between the voir dire of juror 38 and the prosecutor's opportunity to exercise her peremptory challenges,

7

conclusion, we do not address further the defendant's argument that excusing juror 38 based on her ties to Springfield would condone peremptory strikes that would disproportionally impact people of color.

After careful review of the record, we also conclude that the prosecutor's proffered reason for the challenge was "genuine." Kozubal, 488 Mass. at 581, quoting Jackson, 486 Mass. at 768. Finding no merit in the defendant's claims that the prosecutor made "false statements" in explaining her concerns about juror 38's voir dire responses, we discern nothing else in the record to suggest that the prosecutor's proffered reasons for the peremptory challenge were "sham" explanations. Gonzales, 99 Mass. App. Ct. at 167. While it is true that the Commonwealth would have been well-advised to have explored juror 38's views by asking additional questions about the concerns the juror expressed in response to the judge's questions, we are not persuaded that the prosecutor's failure to

---

as well as the amount of information counsel, the judge, and the defendant heard from the jurors who came to sidebar after juror 38 was seated, it was reasonable (if not best practice in this case) for the prosecutor to return both her own focus and that of the others at sidebar to juror 38 by reviewing certain identifying points made by that juror during her voir dire.

do so warrants an inference that the challenge to juror 38 was pretextual.[3]

Judgments affirmed.

By the Court (Singh, Hand & D'Angelo, JJ.[4]),

*Paul Little*

Clerk

Entered:  October 21, 2024.

---

[3] The cases on which the defendant relies with respect to this point are distinguishable from the case before us.  Cf. Flowers v. Mississippi, 588 U.S. 284, 312 (2019), quoting Miller-El v. Dretke, 545 U.S. 231, 246 (2005) (where prosecutor challenged Black juror based on "some sort of connection" to people involved in case, but did not challenge or inquire of three white jurors with apparently similar connections, failure to ask follow-up questions of white jurors "is evidence suggesting that the explanation is a sham and a pretext for discrimination"); Commonwealth v. Carter, 488 Mass. 191, 199-200 (2021) (convictions reversed where judge did not require prosecutor to provide race-neutral reason for challenge to Black juror after judge found juror indifferent); Kesser v. Cambra, 465 F.3d 351, 364 (9th Cir. 2006) (prosecutor's failure to ask any follow up questions to tie his perception of Native American juror's "unusually pretentious [attitude] about her work" on HUD application for tribe to facts of case at issue permitted inference of improper motive).

[4] The panelists are listed in order of seniority.