COMMONWEALTH *vs.* ANNE E. COLTURI.

Franklin. February 8, 2007. - April 19, 2007.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & CORDY, JJ.

*Evidence,* Intoxication, Blood alcohol test, Breathalyzer test, Expert opinion. *Intoxication. Statute,* Construction. *Words,* "Retrograde extrapolation."

This court concluded that 2003 amendments to the statute prohibiting opera-tion of a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1), which added a "per se" violation to the statute for persons with a blood alcohol level of .08 or greater, did not change the law with respect to the admissibility of breathalyzer test results at trial, and such results remain admissible in the absence of expert testimony on the subject of retrograde extrapolation (i.e., testimony establishing the defendant's blood alcohol level at the time of operation), so long as the test is conducted within a reasonable period of time (i.e., within three hours) after the defendant's last operation of the vehicle [811-817]; however, where the Commonwealth proceeds under the statute only on an impaired ability theory and intends to offer evidence of a breathalyzer result of .08 or above, it must offer, as a foundational require-ment of the admissibility of such results, expert testimony on the significance of the test level to the degree of intoxication or impairment of the defendant [817-818].

COMPLAINT received and sworn to in the Orange Division of the District Court Department on April 8, 2005.

A motion in limine was heard by *David S. Ross,* J.

A petition by the Commonwealth for relief pursuant to G. L. c. 211, § 3, and its application for leave to file an interlocutory appeal were considered by *Sosman,* J., in the Supreme Judicial Court for the county of Suffolk, and the matters were reported by her.

*Judith Ellen Pietras,* Assistant District Attorney, for the Com-monwealth.

*Stephen B. Monsein* for the defendant.

*Timothy J. Cruz,* District Attorney, & *Robert C. Thompson,* Assistant District Attorney, for District Attorney for the Ply-mouth District, amicus curiae, submitted a brief.

CORDY, J. The question presented in this case is whether, or on what conditions, the result of a breathalyzer test is admissible in a criminal trial on a charge of operating a motor vehicle while under the influence of intoxicating liquor (OUI), in violation of G. L. c. 90, § 24 (1) (*a*) (1), as amended through St. 2003, c. 28, § 1 (OUI statute).

As a consequence of amendments to the OUI statute enacted in 2003, an OUI violation may be established on proof that a driver was operating a motor vehicle either "with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater" (per se violation), or "while under the influence of intoxicating liquor" (impaired ability violation). G. L. c. 90, § 24 (1) (*a*) (1). A judge in the District Court Department ruled that "the Commonwealth may not offer evidence of a [b]reathalyzer test result obtained more than an hour after evidence of the defendant's last operation of a vehicle to prove the 'per se' offense unless it offers expert [retrograde extrapolation] testimony establishing the defendant's blood alcohol at the time of operation . . . [and] . . . may not offer [such test result] to prove the 'impaired ability to operate' offense unless it offers expert testimony establishing [both] the defendant's blood alcohol level at the time of operation and· the significance of that level as it pertains to impairment." The judge also ruled, however, that in a prosecution of an impaired ability violation, the Commonwealth may offer evidence without the need of expert testimony "that the defendant took a [b]reathalyzer test and that the test reading was greater than zero," thus indicating the presence of alcohol in the defendant's system, but nothing more.[1]

The correctness of the judge's rulings is before the court on a reservation and report of a single justice following both a petition by the Commonwealth for extraordinary relief pursuant to G. L. c. 211, § 3, and its application for leave to file an interlocutory appeal. The parties have filed a statement of agreed facts.

---

[1] The District Court judge made other rulings regarding the admissibility of breathalyzer test results absent written certification of the breathalyzer machine, and the admissibility of records of the office of alcohol testing. These rulings have not been appealed and are not before us.

We conclude that expert testimony on the subject of retrograde extrapolation,[2] which was not a prerequisite to the admission of the results of a properly administered breathalyzer test prior to the 2003 amendments, has not become such as a consequence of the amendments, so long as the test is conducted within a reasonable period of time after the driver's last operation of the vehicle. We also conclude that if the Commonwealth chooses to proceed only on an impaired ability theory and intends to offer evidence of a breathalyzer result of .08 or above, it must offer expert testimony on the significance of that level as it pertains to impairment.[3]

1. *Facts.* Anne Colturi was stopped at 9:10 P.M. by a State trooper who observed her operating a vehicle in an unsafe fashion. On stopping the vehicle, the trooper smelled alcohol in the vehicle and on Colturi, and he observed that Colturi's speech was slurred and her eyes glassy. She swayed, was off balance, and used the vehicle for support as she walked to the rear of the vehicle. Colturi was arrested for operating a motor vehicle while under the influence of alcohol and consented to a breathalyzer test. Two tests were administered, the first at 10:15 P.M. and the second at 10:19 P.M. The results showed a blood alcohol level of .15 per cent. Thereafter, a complaint issued charging her with violating the OUI statute by operating a vehicle "with a percentage, by weight, of alcohol in his or her blood of eight one-hundredths or greater, or while under the influence of intoxicating liquor."

2. *Discussion.* In 2003, the Legislature amended G. L. c. 90, § 24, in several respects. As pertains to the issues before us, the Legislature added language to the OUI statute, making it a violation to operate a motor vehicle not only under the influence of intoxicating liquor, but also with a blood alcohol level of .08 or more. Having added this language to the violation

---

[2]Retrograde extrapolation is a mathematical calculation used to estimate a person's blood alcohol level at a particular point in time by working backward from the time the blood alcohol level was tested and factoring in rates of absorption and excretion. *Commonwealth* v. *Senior,* 433 Mass. 453, 459 (2001), citing R.J. Kenney, Jr., & T.J. Farris, Motor Vehicle Law and Practice § 24.14 (3d ed. 1998).

[3]We acknowledge the amicus brief filed by the District Attorney for the Plymouth District.

provision of the statute, the Legislature deleted language in § 24 (1) (*e*) that had created a "permissible inference" that a person with a blood alcohol level of .08 or more was indeed "under the influence of intoxicating liquor." St. 2003, c. 28, §§ 1, 4.[4]

Whether these amendments changed the law regarding the admissibility of the results of breathalyzer tests in OUI prosecutions, adding new requirements or prerequisites to it, is a matter of statutory interpretation. We interpret statutes "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). We also presume that when the Legislature amends a statute it is "aware of the prior state of the law as explicated by the decisions of this court," *Commonwealth* v. *Callahan*, 440 Mass. 436, 441 (2003), and where it has reenacted statutory language without material change, they are "presumed to have adopted the judicial construction put upon it." *Nichols* v. *Vaughan*, 217 Mass. 548, 551 (1914).

The purpose of G. L. c. 90, § 24, generally, is to "protect the public from drivers whose judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies are

---

[4]General Laws c. 90, § 24 (1) (*a*) (1) (OUI statute), now provides, in pertinent part: "Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater, or while under the influence of intoxicating liquor . . . shall be punished . . . ."

General Laws c. 90, § 24 (1) (*e*), now provides, in pertinent part, that, in a prosecution under the OUI statute, "evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by chemical test or analysis . . . of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor." It also provides that evidence of a BAC percentage of .05 or less gives rise to "a permissible inference that [the] defendant was not under the influence of intoxicating liquor" and that where there is evidence of a blood alcohol level of more than .05 but less than .08 "there shall be no permissible inference."

diminished because of the consumption of alcohol." *Commonwealth* v. *Connolly*, 394 Mass. 169, 172-173 (1985). The expressly stated purpose of the 2003 amendments was to "avoid loss of life and the loss of federal highway aid funds" by the prompt enactment of further provisions "necessary for the immediate preservation of the public safety." St. 2003, c. 28, emergency preamble. It is beyond reasonable dispute that, in adding a per se violation to the OUI statute, the Legislature intended to strengthen the protections afforded the public from drivers who might be impaired by the consumption of alcohol. It is in this context that we examine whether the Legislature also intended to change the law with respect to the admissibility of breathalyzer test results to make it more difficult for the Commonwealth to present what has otherwise been considered relevant and highly reliable evidence of the level of alcohol in the blood of a driver arrested for OUI. *Commonwealth* v. *Durning*, 406 Mass. 485, 490 (1990) ("The Legislature and this court have recognized the reliability of the scientific principles underlying the use of breathalyzer evidence").

Our decisions prior to the enactment of the 2003 amendments rejected attempts to exclude breathalyzer test results because of the lapse between the time of the alleged offense and the administration of the breathalyzer test, which often occurs away from the scene of the arrest, at a police station, and always occurs some period of time thereafter. *Commonwealth* v. *Marley*, 396 Mass. 433, 438 (1985) (results admissible despite more than two and one-half hours between time of accident and breathalyzer test). Even when confronted with expert evidence that "it was possible for a person's blood alcohol level to increase [rather than decrease] over a short period of time even though no additional alcohol was ingested during that time," we had not required expert testimony on retrograde extrapolation as a prerequisite to the admissibility of breathalyzer test results, and consistently ruled that any delay in the administration of the breathalyzer test goes to the weight of the evidence, not its admissibility. *Commonwealth* v. *Durning, supra* at 494 n.11, citing *Commonwealth* v. *Marley, supra.* Other State courts have reached the same conclusion. See, e.g., *State* v. *Taylor*, 132 N.H. 314, 319 (1989) (delay between operation of a motor

vehicle and testing goes to weight accorded the test by trier of fact); *Commonwealth* v. *Zugay*, 745 A.2d 639, 647 (Pa. Super. Ct. 2000) (amount of time elapsed between time of driving and testing affects weight and not admissibility of evidence); *State* v. *McDonald*, 421 N.W.2d 492, 494 (S.D. 1988) (lapse of time between operation of vehicle and testing goes to weight and not admissibility of test result in prosecution for driving while under the influence); *Garcia* v. *State*, 112 S.W.3d 839 (Tex. Ct. App. 2003) (tests done two hours after accident not rendered inadmissible by failure of State to extrapolate).[5]

The position proposed by the defendant and accepted by the judge, that expert testimony on retrograde extrapolation must now be offered as a prerequisite to the admission of breathalyzer test results, imposes new and significant burdens on the Commonwealth. It is contended by the Commonwealth, and undisputed on the present record, that numerous OUI cases are prosecuted every day in courts throughout the Commonwealth, that there are few State employed experts on retrograde extrapolation available, and that the costs of utilizing private experts at these trials would be inordinate. More importantly, in many, if not most, cases, the Commonwealth will not be able to acquire the information necessary to construct an accurate retrograde extrapolation because such information (e.g., when and in what amounts the defendant consumed the alcohol prior to driving)[6] will almost always be in the possession of defendants and protected by their constitutional right to remain silent. See *State* v. *Taylor, supra* at 320 (gathering information

---

[5]See also *Miller* v. *State*, 597 So. 2d 767, 770 (Fla. 1991) (State need not present "relate back" evidence for court to admit evidence of blood test, and delay between driving and testing goes to weight of results only); *People* v. *Kappas*, 120 Ill. App. 3d 123, 129 (1983) (results of test administered thirty-eight minutes after driving properly admitted without further evidence because delay reasonable and passage of time affects weight of test results); *State* v. *Kubik*, 235 Neb. 612, 634 (1990) (no need to provide foundation relating back test results to time of driving; delay affects weight, not admissibility, of breath test results). Contrast *State* v. *Ladwig*, 434 N.W.2d 594 (S.D. 1989) (retrograde extrapolation testimony necessary to convict defendant of per se violation); *State* v. *Dumont*, 146 Vt. 252 (1985) (in prosecution for driving while under influence of alcohol, results of a blood alcohol content test admissible only with "relation back" testimony establishing defendant's blood alcohol content at time of actual operation).

[6]"Retrograde extrapolation is based on the theory that, as alcohol is

necessary for accurate retrograde extrapolation would place "impossible burden upon the State").

If the Legislature had intended to change our existing rule of admissibility when it amended the OUI statute in 2003, and to place additional and even "impossible" burdens on the Commonwealth, it would have done so explicitly. Cf. *Commonwealth* v. *Bowden*, 447 Mass. 593, 598 (2006) (where G. L. c. 90, § 24 [4], expressly states one way to meet burden of proof, it is permissible to meet burden of proof with other means because Legislature did not explicitly forbid other means). It did not. To the contrary, it left in place the language of § 24 (1) (*e*) that in any prosecution under the OUI statute, "evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by . . . a chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor." The only change of substance to the statutory scheme was the elimination of the statutory "permissible inference" in § 24 (1) (*e*) that a person with a blood alcohol test result of .08 or more "was under the influence of intoxicating liquor," and its replacement with a per se violation for operating a motor vehicle with a blood alcohol level at that same level. This rearrangement has no bearing on the admissibility of breathalyzer test results.

Leaving the statutory declaration of relevance aside, a breathalyzer test result in the range of .08 or greater, acquired within a reasonable time after operation, is as relevant to a jury's determination whether the defendant was operating a mo-

---

consumed, it is passed from a person's stomach and intestines into his blood. *Mata* v. *State*, 46 S.W.3d 902, 909 (Tex. Crim. App. 2001). When the alcohol reaches the brain and nervous system, the characteristic signs of intoxication begin to appear. *Id.* The length of time necessary for alcohol to be absorbed into a person's blood stream depends on a variety of factors, including (1) the presence and type of food in the stomach; (2) the person's gender, weight, age, mental state, and drinking pattern; (3) the amount and type of beverage consumed; and (4) the time period of alcohol consumption. *Id.* At some point after drinking has ceased, the person's blood alcohol concentration will reach a peak; after the peak, the concentration will begin to fall as alcohol is eliminated from the person's body. *Id.*" *Garcia* v. *State*, 112 S.W.3d 839, 849 n.4 (Tex. Ct. App. 2003).

tor vehicle with a .08 blood alcohol level in violation of the law, as a similar result was previously relevant to a jury's determination whether the defendant was operating a motor vehicle with a blood alcohol level of .08 or greater, from which they could permissibly infer that he was operating while under the influence of intoxicating liquor in violation of the law. Our prior holdings that a time delay between the operation of a motor vehicle and the administration of the test goes to the weight the jury might afford the test results and not on their admissibility, are similarly applicable. Expert testimony on retrograde extrapolation is not a prerequisite to the admissibility of breathalyzer results in OUI prosecutions.

Our conclusion that breathalyzer test results are admissible in OUI prosecutions, without the necessity of retrograde extrapolation, is limited to cases where the tests have been conducted within a reasonable time of the operation of a motor vehicle. See *Commonwealth* v. *Marley*, 396 Mass. 433, 438-439 (1985) ("time delay was reasonable and warranted in the circumstances" where police dispatched to accident at 4:30 A.M. and tests conducted at 7:05 A.M.); *State* v. *Kubik*, 235 Neb. 612, 634 (1990) (breath test must be administered within "reasonable time" to be probative and admissible; determination of reasonableness is fact specific); *State* v. *Taylor*, 132 N.H. 314, 320-321 (1989) (breath test taken within "reasonable period of time" admissible on per se and impairment theories without retrograde extrapolation).

The Massachusetts statute (unlike some others) is silent on the subject of time delay, and the requirement that tests must be performed in a "reasonable time" has been overlaid by our decisional law. Statutes in many other States, however, have dealt directly with the issue and set limits on what a reasonable delay may be. These statutes provide a useful guide for our reference.[7] We conclude that the passage of up to three hours between testing and operation is a reasonable time for this

[7]Haw. Rev. Stat. § 291E-3(a) (Supp. 2005) (test result of .08 or more within three hours after time of violation competent evidence that person under influence at time of violation); Ind. Code Ann. §§ 9-30-6-2, 9-30-6-15 (2004) (results of test admissible if administered within three hours after officer had probable cause to believe person driving while under influence); Iowa Code Ann. § 321J.2(8)(a) (2005) (results of test administered within two

purpose. The facts and circumstances in particular cases may establish that a lesser or greater time period ought to be applied. Such determinations fall within the sound discretion of the trial judge. See *Zucco* v. *Kane*, 439 Mass. 503, 507 (2003), quoting J.R. Nolan & C.A. Caldeira, Appellate Procedure § 1:4 (2d ed. 2002) (trial judge has "abundance of discretion" in determining admissibility of evidence).

Finally, if the per se and impaired ability theories of criminal liability are charged in the alternative (as they were here) and so tried, we see no prejudice in the admission of breathalyzer test results without expert testimony establishing the significance of the test level to the degree of intoxication or impairment of the defendant. In such a case, the jury presumably would be instructed that if they find the defendant operated her motor vehicle with a blood alcohol content of .08 or greater, she is guilty of violating the OUI statute, and if they do not so find, they may still consider whether she violated the statute by operating while under the influence of intoxicating liquor. Relevant to this determination would be the statutory provision creating a permissible inference that the defendant was not operating while under the influence if the test results were .05 or less, and the lack of any permissible inference if the results were greater than .05 and less than .08.

If, however, the Commonwealth were to proceed only on a theory of impaired operation and offered a breathalyzer test result of .08 or greater, without evidence of its relationship to

hours after defendant in physical control of motor vehicle admissible and presumed to equal blood alcohol concentration at time of driving); Ohio Rev. Code Ann. § 4511.19(D)(1) (West Supp. 2006) (evidence of blood alcohol concentration as calculated within two hours of time of violation admissible to show blood alcohol concentration at time of offense); W. Va. Code Ann. § 17C-5-8(a) (2004) (evidence of blood alcohol concentration at time of arrest or acts alleged as shown by analysis of blood, breath, or urine admissible if sample taken within two hours from and after time of arrest or acts alleged); Wis. Stat. Ann. § 885.235(1g) (West 1997 & Supp. 2006) (evidence of alcohol concentration at time in question as shown by test administered within three hours after event to be proved admissible without requiring any expert testimony). Cf. Wash. Rev. Code Ann. § 46.61.502(4) (West 2001) (evidence of blood or breath test results obtained more than two hours after vehicle operation admissible to show alcohol concentration at time of driving if .08 or higher or as evidence of driving while under influence by intoxicating liquor if higher than 0.00).

intoxication or impairment and without the statutorily permissible inference of intoxication eliminated by the 2003 amendments, the jury would be left to guess at its meaning. We agree with the District Court judge that in such circumstances, the "prejudicial effect of such evidence [would outweigh] any possible probative value." While it is difficult to envision a situation in which the Commonwealth would proceed in this fashion, if it chooses to do so, it must present expert testimony establishing a relationship between the test results and intoxication as a foundational requirement of the admissibility of such results.

The decision of the District Court judge is reversed in part, and the case remanded for further proceedings consistent with this opinion.

*So ordered.*