## COMMONWEALTH *vs.* MELVIN HUBERT.

No. 07-P-269.

Suffolk. December 10, 2007. - May 2, 2008.

Present: LENK, ARMSTRONG, & GRAHAM, JJ.

Further appellate review granted, 451 Mass. 1108 (2008).

*Motor Vehicle,* Operating under the influence. *Evidence,* Breathalyzer test.

At the trial of an indictment charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, but not of driving with a blood alcohol content of .08 percent or greater, the judge erred in admitting in evidence a breathalyzer reading of .16 percent and in instructing the jury that, based on that reading, they might find the defendant guilty of the crime charged, where the Commonwealth failed to produce expert testimony to explain the connection between alcohol level and driving impairment, the evidence of the defendant's intoxication was strong but not overwhelming, and it was not possible to say that the breathalyzer evidence had no effect, or only scant effect, on the jury. [663-664]

INDICTMENT found and returned in the Superior Court Department on November 3, 2003.

The case was tried before *Charles T. Spurlock,* J.

*Thomas C. Foley* for the defendant.

*Carina R. Canaan,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant appeals from a conviction on an indictment of operating a motor vehicle under the influence of intoxicating liquor (OUI). He argues, on appeal, that it was error to allow the prosecutor to put in evidence a breathalyzer reading of .16[1] and to instruct the jury that, based on that reading, they might find the defendant guilty of the crime charged.

Last year, the Supreme Judicial Court decided *Commonwealth* v. *Colturi,* 448 Mass. 809 (2007), which held that the

---

[1]That is, a blood alcohol content of sixteen one hundredths of one percent, by weight.

Legislature, by St. 2003, c. 28, §§ 1 and 4, had in effect established alternate ways of violating the OUI statute, G. L. c. 90, § 24(1)(*a*). One is driving on a public way with a blood alcohol content of .08 or greater (the "per se" violation). The other is the traditional "impaired driving" violation. As to the latter, the court determined that the statutory changes, by eliminating the permissive inference of impaired operation based on a breathalyzer reading of .08 or greater,[2] had made breathalyzer readings inadmissible on a charge of impaired driving only, except where the Commonwealth adduces expert testimony to explain the connection between alcohol level and driving impairment.

> "If . . . the Commonwealth were to proceed only on a theory of impaired operation [instead of on both theories] and offered a breathalyzer test result of .08 or greater, without evidence of its relationship to intoxication or impairment and without the statutorily permissible inference of intoxication eliminated by the 2003 amendments, the jury would be left to guess at its meaning. . . . [I]n such circumstances, the 'prejudicial effect of such evidence [would outweigh] any possible probative value.' While it is difficult to envision a situation in which the Commonwealth would proceed in this fashion, if it chooses to do so, it must present expert testimony establishing a relationship between the test results and intoxication as a foundational requirement of the admissibility of such results."

*Commonwealth* v. *Colturi*, 448 Mass. at 817-818.

In the *Colturi* case, the Commonwealth, armed with a breathalyzer reading above .08, charged both theories of violation in the same complaint. As to that situation, the Supreme Judicial Court held:

---

[2]Before the 2003 amendments, G. L. c. 90, § 24(1)(*e*), as most recently amended by St. 1994, c. 25, § 5, had established a series of inferences: that if the driver's breathalyzer reading was .05 or less, there was a permissible inference that he (or she) was not operating under the influence of intoxicating liquor; that if the driver's reading was greater than .05 but less than .08, the statute provided no inference either way; and if the reading was .08 or greater, there was a permissible inference that the driver was operating under the influence. The 2003 amendment struck the permissive inference of impaired operation from § 24(1)(*e*), presumably because it had in § 24(1)(*a*)(1) elevated the .08 or above reading to the status of a conclusive inference.

Commonwealth *v.* Hubert.

"[I]f the per se and impaired ability theories of criminal liability are charged in the alternative (as they were here [i.e., in *Colturi*]) and so tried, we see no prejudice in the admission of breathalyzer test results without expert testimony establishing the significance of the test level to the degree of intoxication or impairment of the defendant. In such a case, the jury presumably would be instructed that if they find the defendant operated her motor vehicle with a blood alcohol content of .08 or greater, she is guilty of violating the OUI statute, and if they do not so find, they may still consider whether she violated the statute by operating while under the influence of intoxicating liquor."

*Id.* at 817.

Here, in contrast, the defendant was charged with violating the statute only by driving while under the influence of intoxicating liquor. No mention was made in the indictment of driving with blood alcohol of .08 or greater. By proceeding in that fashion, the Commonwealth made it necessary to furnish expert testimony if it wished to be able to use the high breathalyzer reading. In light of the *Colturi* decision, it was error for the judge to allow the Commonwealth to introduce the breathalyzer result and to instruct the jury that they might infer a violation of the statute on the basis thereof. Similarly, it was error to over-rule, in effect, the defendant's objection to the prosecutor's opening statement, whereby the jury were first told of the breathalyzer result, and to the jury instruction.[3]

The Commonwealth argues, nevertheless, that we should af-firm the conviction on the basis that the evidence of the defen-dant's intoxication was otherwise overwhelming. The evidence was, in our view, strong but not overwhelming. The defendant's counsel was able to find enough contrasts in the testimony of

[3]The Commonwealth makes an argument that, because of the Com-monwealth's long tradition of broad, generalized pleading in criminal cases and because the prosecutor made clear from the outset that he intended to put in evidence the breathalyzer result and argue it to the jury, the Commonwealth should be treated, notwithstanding the language of the indictment, as having "proceeded" on both theories. The argument is essentially circular. If ac-cepted, it would sanction admitting the breathalyzer result without expert testimony in every case, regardless whether the indictment or complaint charged driving with blood alcohol of .08 or above. It would render the warn-ing in *Colturi* without application and meaningless.

three officers, and enough discrepancies in the testimony otherwise, to be able to construct a capable, not implausible, jury argument for the defendant's acquittal.

In the circumstances, viewing the evidence dispassionately, we cannot say with assurance that the breathalyzer evidence and the argument built thereon, coupled with the judge's instruction, had no effect, or only scant effect, on the jury. Here, we emphasize that this case is not controlled by the substantial risk of a miscarriage of justice standard of review. The defendant's counsel took proper objections throughout — to the opening statement, to the admission of the breathalyzer result, and to the judge's instruction. "The standard of review for objected-to trial errors . . . concerns whether 'the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' " *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 n.7 (1999), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

The judgment must therefore be reversed and the case remanded for a new trial or other proceedings not inconsistent herewith.

*So ordered.*