## COMMONWEALTH vs. TRACEY DOUGLAS.

No. 08-P-286.

Bristol. March 6, 2009. - November 2, 2009.

Present: GRAHAM, DREBEN, & SIKORA, JJ.

*Motor Vehicle,* Homicide, Operating under the influence. *Practice, Criminal,* Challenge to jurors, Instructions to jury. *Jury and Jurors. Evidence,* Intoxication, Blood alcohol test, Expert opinion.

The record at a criminal trial did not demonstrate that a judge properly excused a prospective juror on the basis of a peremptory challenge by the Commonwealth, where the judge's ruling did not contain a prompt assessment of the adequacy and genuineness of the prosecutor's explanation of the challenge, and the judge did not find either of the two grounds offered by the Commonwealth to be adequate; this court therefore reversed the defendant's convictions. [648-650]

At a trial of indictments charging motor vehicle homicide by operation under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24G(*a*), and negligent operation of a motor vehicle, in violation of G. L. c. 90, § 24(2)(*a*), the judge erred in admitting evidence of the defendant's blood alcohol content without expert testimony to explain its relationship to intoxication, and in instructing the jury, given that the judge did not give an instruction on the per se theory of operation under the influence and incorrectly instructed the jury on the permissible inference of operating under the influence, which was eliminated and replaced with a conclusive inference by St. 2003, c. 28, §§ 1, 21, 22; where, without evidence of the defendant's blood alcohol content, the Commonwealth's evidence was strong but not overwhelming, the errors may have materially influenced the verdict and therefore created a substantial risk of a miscarriage of justice. [650-653]

Complaint received and sworn to in the New Bedford Division of the District Court Department on June 3, 2004.

The case was tried before *Bernadette L. Sabra,* J.

*Paul C. Brennan* for the defendant.

*David J. Gold,* Assistant District Attorney (*Garrett R. Fregault,* Assistant District Attorney, with him) for the Commonwealth.

SIKORA, J. A District Court jury found the defendant guilty of motor vehicle homicide by operation under the influence of intoxicating liquor and negligent operation (in violation of G. L. c. 90, § 24G[a]), and by negligent operation of a motor vehicle (in violation of G. L. c. 90, § 24[2][a]). The defendant, who is African-American, appeals upon claims that (1) the trial judge improperly allowed the Commonwealth's peremptory challenge of the only African-American in the venire; (2) the trial judge improperly admitted evidence of the defendant's blood alcohol content and erroneously instructed the jury on that evidence; and (3) calculated improprieties by the prosecutor and extraneous influences upon the jury resulted in reversible error. We reverse. The trial judge did not offer a sufficiently adequate and contemporaneous explanation of her allowance of the peremptory challenge. In addition, the judge erroneously admitted evidence of the defendant's blood alcohol content without the requisite expert testimony and gave an erroneous jury instruction in relation to that evidence.

*Procedural background.* On February 3, 2004, the New Bedford Division of the District Court Department issued a complaint charging the defendant with negligent operation of a motor vehicle in violation of G. L. c. 90, § 24(2)(a). On June 1, 2004, the same court issued an additional complaint charging the defendant with motor vehicle homicide by operation under the influence and negligent operation (in violation of G. L. c. 90, § 24G[a]).[1] On July 25, 2005, a District Court judge allowed the Commonwealth's motion to amend the June 1 complaint to add an alternate theory of intoxication, a 0.08 percent "per se" violation of the motor vehicle homicide statute.[2] On

---

[1]In addition to the negligent operation charge, the February 3 complaint charged the defendant with motor vehicle homicide by negligent operation in violation of G. L. c. 90, § 24G(b). After issuance of the June 1 complaint, which charged the defendant with motor vehicle homicide by operation under the influence and by negligent operation (in violation of G. L. c. 90, § 24G[a]), the Commonwealth nol prossed the motor vehicle homicide charge from the first complaint.

[2]Under G. L. c. 90, § 24G(a), the Commonwealth may use either of two theories to prove operation under the influence: (1) operation "with a percent by weight, of alcohol in [the] blood of eight one-hundredths or greater, or [2] while under the influence of intoxicating liquor." G. L. c. 90, § 24G(a), as amended through St. 2003, c. 28, § 21. See *Commonwealth* v. *Colturi*, 448

May 15, 2006, jury empanelment commenced in the New Bedford Division of the District Court Department, and on May 19, 2006, the jury returned guilty verdicts on both charges.

The trial judge sentenced the defendant to two and one-half years in the house of correction on the motor vehicle homicide charge and a consecutive sentence of two years in the house of correction on the negligent operation charge. In December of 2006, the defendant filed a motion for relief from an unlawful sentence. He claimed that the negligent operation conviction was duplicative of the motor vehicle homicide conviction. In January of 2007, the trial judge allowed the motion. The allowance of that motion is not at issue in this appeal.[3]

*Background.* The evidence at trial included the following. On November 27, 2003, at approximately 8:30 P.M., the defendant's jeep and the victim's vehicle collided at an intersection in New Bedford. Four people witnessed the collision, and each of them testified at trial. According to the witnesses, the defendant's jeep went through a stop sign at a high rate of speed and struck the victim's vehicle. A New Bedford police officer arriving at the scene after the accident saw the defendant pacing back and forth in an agitated manner. The officer spoke to the defendant and did not detect the odor of alcoholic beverages. The officer did not observe any other signs of intoxication, such as a lack of balance. The victim died at the scene from multiple traumatic injuries. Paramedics took the defendant to the nearest hospital for treatment.

Shortly after the collision, a New Bedford police department accident reconstruction expert investigated the cause of the crash. She analyzed the damage to the vehicles and made numerous measurements of the crash scene. Based on her investigation, the expert concluded that the defendant's jeep had been traveling at sixty-four miles per hour when it entered the intersection.[4]

Mass. 809, 810 (2007); *Commonwealth* v. *Hubert*, 71 Mass. App. Ct. 661, 661-662 (2008), *S.C.*, 453 Mass. 1009 (2009). Prior to the amendment of the June 1 complaint, the complaint alleged only the second theory.

[3]In April of 2007, after a hearing, the trial judge allowed the Commonwealth's motion to file a late notice of appeal from the grant of the defendant's motion for relief from an unlawful sentence. The Commonwealth's appeal has not entered in this court. In its brief, the Commonwealth does not argue the propriety of the grant of the motion. Therefore, we do not address it.

[4]She opined also that the defendant's jeep had struck a vehicle parked on the side of the road prior to the collision with the victim's vehicle.

Soon after the defendant arrived at the hospital, two New Bedford police officers interviewed him. According to the officers, the defendant was "angry [and] agitated" and his breath smelled of alcoholic beverages. He told the officers that he had consumed "a forty of OE," a forty-ounce bottle of Olde English brand beer. Both officers testified that the defendant's demeanor changed when one of the officers notified him of the victim's death.

While at the hospital, the defendant complained of pain in his chest. In response to his complaint, hospital staff drew a blood sample from him and analyzed it. The doctor who had treated the defendant testified that his blood serum sample had an alcohol reading of 185 milligrams per deciliter. A laboratory supervisor from the Massachusetts State police crime laboratory testified that the reading translated to a whole blood alcohol level of .15 to .16.

*Discussion.* 1. *Peremptory challenge.* Jury selection proceeded over two days. On the first day, the judge called juror nineteen to side bar for further questions. The juror told the judge that she was diabetic. The judge assured her that the disease would not be a problem. The juror noted also that her son had faced criminal charges in the New Bedford Division of the District Court Department. She stated, however, that she could be a fair and impartial juror. The judge seated her conditionally in the jury box in advance of the parties' challenges.

The next day, the Commonwealth invoked one of its peremptory challenges to exclude juror nineteen. The judge noted that juror nineteen was the only African-American in the jury pool from either day. She asked the Commonwealth to explain the challenge. In response, the prosecutor gave two reasons: (1) the juror's speech and mannerisms indicated that she was slow and might have difficulty in the deliberation of the evidence of a three- or four-day trial; and (2) the prosecutor's discomfort caused by the juror's fixed stare at him during empanelment.[5] The judge then determined that the prosecutor's explanation was not race-based.

---

[5]In its entirety, the prosecutor's explanation was: "Judge, she appears slow to me at side-bar in her speech and mannerisms and while we were impaneling today, I locked eyes with her a few times and it appeared to me that she was staring at me, staring me down while we were at the side-bar; and it

Defense counsel asked for the judge's impression of juror nineteen. The judge stated that the juror had "somewhat of a halting speech pattern" and was "not incredibly articulate but . . . not inarticulate either." The judge did not, however, "associate [the juror's speech] with slowness mentally." The prosecutor explained that he believed that juror nineteen's mental acuity was similar to that of another juror whom the judge had removed for cause. The judge did not agree that juror nineteen suffered from a similar disability, but she allowed the Commonwealth's peremptory challenge without further reasoning at that time.[6] Defense counsel objected.

On the following day, before the jury had entered the courtroom, the judge commented further on the Commonwealth's peremptory challenge of juror nineteen. She stated that, after the previous day's discussion, she had consulted decisions on peremptory challenges of members of protected classes,[7] and that she "wanted to put some more . . . findings on the record." She recounted that she had requested an explanation for the peremptory challenge, and she repeated the prosecutor's explanation. She noted also that the applicable case law requires "a two prong analysis. One having to do with the adequacy of the Commonwealth's position once having been questioned about the reason for the challenge and then the genuineness of that." Although the prosecutor had not mentioned the criminal

---

bothered me. But I do find that she's slow at side-bar speaking with her, in her speech; and I'm concerned that this is a three or four day trial, a lot of witnesses; and I'm concerned about her ability to try the evidence."

[6]The judge observed that the defendant had adequately preserved the issue for appeal.

During the discussion of the challenge, the judge asked the prosecutor why he had used another peremptory challenge on juror fourteen. On the previous day, the judge had asked juror fourteen, a white male, some questions at side bar, and the juror had noted the presence of only one African-American in the venire. The prosecutor stated that he should not have to explain his use of a peremptory challenge on juror fourteen because the juror was not a member of a protected class. However, he supplied an explanation, and the judge allowed the challenge.

[7]The parties assert that the judge stated that she had read Commonwealth v. Maldonado, 439 Mass. 460 (2003). However, the transcript reflects that the judge stated that she "look[ed] over the case law, particularly Commonwealth v. Mulder (phonetic), with respect to the possibility of a peremptory challenge being used to exclude members of a [discrete] group. . . ." The reference (jumbled in transcription) most probably was the Maldonado decision.

history of juror nineteen's son when he had offered his explana-
tion for the challenge, the judge referred to it in her findings.[8]
The judge concluded her findings with the statement that "I
find . . . the Commonwealth's explanation both adequate and
genuine, which is why I allowed the challenges to stand."

Article 12 of the Declaration of Rights of the Massachusetts
Constitution and the equal protection clause of the Federal
Constitution prohibit the use of peremptory challenges to exclude
prospective jurors on the basis of race. See *Commonwealth* v.
*Harris*, 409 Mass. 461, 464 (1991). "[W]e begin with the pre-
sumption that a peremptory challenge is proper." *Commonwealth*
v. *Smith*, 450 Mass. 395, 406, cert. denied, 129 S. Ct. 202
(2008). However, one may rebut that presumption through proof
"that (1) a pattern of conduct has developed whereby several
prospective jurors who have been challenged peremptorily are
members of a discrete group, and (2) there is a likelihood they
are being excluded from the jury solely by reason of their group
membership." *Commonwealth* v. *Soares*, 377 Mass. 461, 490,
cert. denied, 444 U.S. 881 (1979). Either the party opposed to the
challenge or the trial judge, sua sponte, may raise the issue of the
propriety of the challenge. See *Commonwealth* v. *Maldonado*,
439 Mass. 460, 463 (2003). When "the judge initiates a sua
sponte inquiry into the justification for the challenge, this initia-
tion almost necessarily includes an implicit finding that the prima
facie case of discrimination has been made." *Id.* at 463 n.5.

Once the prima facie case of discrimination has been made,
the proponent of the peremptory challenge must provide an
explanation that "pertain[s] to the individual qualities of the
prospective juror and not to that juror's group association."
*Commonwealth* v. *Soares*, *supra* at 491. If the proponent's

[8]The judge's reference to the criminal history of juror nineteen's son was as
follows: "I would also add that it was known to all of us that [juror nineteen]
had had a son who had apparently a criminal matter in this court, perhaps
even before me because she seemed to recall me, just this past fall that was
prosecuted by the district attorney's office and apparently came up. . . .
[A]nd I don't remember the case per se but she spoke about it. It apparently
just happened last fall."

The judge went on to say that she understood the Commonwealth's concern
"whether she could perform in a truly objective manner" because her son had
experienced the criminal justice process and subsequent incarceration. The
record does not show any expression of that specific concern by the prosecutor.

explanation seems superficial, the judge should also allow rebuttal from the adverse party. See *Commonwealth* v. *Calderon*, 431 Mass. 21, 26 (2000). The judge must then "make an independent evaluation of the [proponent's] reasons and . . . determine specifically whether the explanation was bona fide or a pretext." *Ibid.* "In other words, the judge must decide whether the explanation is both 'adequate' and 'genuine.' " *Commonwealth* v. *Maldonado, supra* at 464, quoting from *Commonwealth* v. *Garrey*, 436 Mass. 422, 428 (2002). "[I]t is imperative that the record explicitly contain the judge's separate findings as to both adequacy and genuineness and, if necessary, an explanation of those findings." *Commonwealth* v. *Maldonado, supra* at 466. See *Commonwealth* v. *Benoit*, 452 Mass. 212, 221 (2008).

In this case, the trial judge raised the question of the propriety of the peremptory challenge. She appropriately requested an explanation from the prosecutor (the proponent of the challenge) and allowed defense counsel to respond. See *Commonwealth* v. *Soares, supra* at 491; *Commonwealth* v. *Calderon, supra* at 26. The prosecutor explained that he was challenging the juror because he believed her to be "slow" and because she had stared at him in a discomforting manner. The judge received defense counsel's opposing response. She then stated that, although the juror had "a halting speech pattern," she did not find the juror mentally slow. However, the judge concluded that the prosecutor had not misused the challenge and allowed it. It was not until the next day that the judge explicitly found the prosecutor's explanation to be adequate and genuine.

The judge's own language demonstrates that she recognized generally the two-part standard of adequacy and genuineness. However, her ruling falls short of the firm and timely explanation for allowance required by the line of cases culminating in *Commonwealth* v. *Benoit, supra.* As in *Commonwealth* v. *Maldonado, supra*, and *Commonwealth* v. *Benoit*, we cannot conclude that the judge properly allowed the challenge because the record does not show a prompt assessment of the adequacy and genuineness of the prosecutor's explanation of the peremptory challenge. See *Commonwealth* v. *Maldonado, supra* at 466-467 (judge should not have accepted prosecutor's peremptory challenge where judge

requested explanation and then allowed challenge but "did not find that the prosecutor had met her burden of establishing an adequate, race-neutral explanation that was the genuine reason for the challenge"); *Commonwealth* v. *Benoit, supra* at 222-226 (defendant's right to trial by jury selected without discrimination not adequately protected where court could not determine whether trial judge gave meaningful consideration to adequacy and genuineness of reason for peremptory challenge).

In sum, the record contains references to three possible grounds for disqualification of the juror: her staring at the prosecutor; her suspected slowness; and the recent involvement of her son as a defendant prosecuted by the same district attorney's office.[9] The judge did not address the ground of staring.[10] She *rejected* the suspected slowness. She introduced, a day later, the experience of the son, a potentially serious ground but one never invoked by the prosecutor in support of the suspect peremptory challenge.[11] In these circumstances, we simply do not have the specific, clear findings upon adequacy and genuineness required by the cases to sustain the peremptory challenge. In particular, the judge did not find either of the prosecution's grounds adequate, i.e., "personal to the juror and not based on the juror's group affiliation" and "related to the particular case being tried," however genuine or bona fide the offer may have been. *Commonwealth* v. *Maldonado,* 439 Mass. at 464-465. The governing standard is demanding. The precedents require reversal of the convictions.

2. *Evidence of blood alcohol content.* The Commonwealth

---

[9]As mentioned above, in the next-day review of her reasons for allowance of the peremptory challenge, the judge referred to the experience of juror nineteen's son in the New Bedford Division of the District Court Department. See note 8, *supra.* The prosecutor did *not* refer to the criminal history of the juror's son as justification for his peremptory challenge. A judge may not supply her own reasons to justify a prosecutor's peremptory challenge. See *Commonwealth* v. *Fryar,* 414 Mass. 732, 739 (1993), *S.C.,* 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997).

[10]That explanation had little chance of success. "Challenges based on subjective data such as a juror's looks or gestures, or a party's 'gut' feeling should rarely be accepted as adequate because such explanations can easily be used as pretexts for discrimination." *Commonwealth* v. *Maldonado,* 439 Mass. at 465.

[11]This reasoning does not interfere with the authority of a trial judge spontaneously to identify, establish, and rule upon a ground of disqualification independently of any challenge of either the Commonwealth or a defendant.

began trial with two theories of operation under the influence, the per se theory (blood alcohol content of 0.08 percent or greater) and the impaired operation theory. At the beginning of the trial, the judge gave preliminary instructions to the jury in which she explained the nature of the charges against the defendant. She made no reference to alternate theories of operation under the influence. During the trial, the Commonwealth introduced evidence of the defendant's blood alcohol content but offered no expert testimony to explain the relationship between blood alcohol content and impaired operation. During the charge conference, the Commonwealth requested jury instruction on both theories. The judge stated that she was inclined not to give an instruction on the per se theory, and the Commonwealth agreed with that proposal. The judge instructed the jury, in relevant part, as follows: "The law says that if the percentage of alcohol by weight in the defendant's blood was .08 percent or more[,] from such evidence you may, if you wish, draw an inference that the defendant was under the influence of intoxicating liquor at the time." For reasons discussed below, the instruction was erroneous. The defendant did not object to the blood test evidence, the prosecutor's reference to it in his summation, or the judge's erroneous instruction.

In 2003, the Legislature amended both G. L. c. 90, § 24G, the motor vehicle homicide statute, and G. L. c. 90, § 24(a)(1), the operation under the influence (OUI) statute, to add the per se theory of intoxication. St. 2003, c. 28, §§ 1, 21, 22. Pursuant to the amendments, the Commonwealth may prove intoxication through evidence that the defendant had "a percentage, by weight, of alcohol in [his] blood of eight one-hundredths or greater." G. L. c. 90, § 24G(a). Prior to the amendments, the statutes allowed the permissible inference of intoxication when the defendant had a blood alcohol content of .08 percent or greater. *Commonwealth* v. *Colturi*, 448 Mass. 809, 811-812 (2007). The 2003 amendments eliminated the permissible inference and replaced it with a conclusive inference. See *Commonwealth* v. *Hubert*, 71 Mass. App. Ct. 661, 662 n.2, *S.C.*, 453 Mass. 1009 (2008).

In *Commonwealth* v. *Colturi*, *supra*, the Supreme Judicial Court held that, if the Commonwealth relies solely on an impaired operation theory, breathalyzer readings are inadmissible in the

absence of expert testimony to explain their significance. *Id.* at 817-818. The decision states:

> "If . . . the Commonwealth were to proceed only on a theory of impaired operation [instead of both a per se theory and an impaired operation theory] and offered a breathalyzer test result of .08 or greater, without evidence of its relationship to intoxication or impairment and without the statutorily permissible inference of intoxication eliminated by the 2003 amendments, the jury would be left to guess at its meaning."

*Ibid.* As for trials where the Commonwealth relies on both theories, the decision states further:

> "[I]f the per se and impaired ability theories of criminal liability are charged in the alternative . . . and so tried, we see no prejudice in the admission of breathalyzer test results without expert testimony establishing the significance of the test level to the degree of intoxication or impairment of the defendant. In such a case, the jury presumably would be instructed that if they find the defendant operated her motor vehicle with a blood alcohol content of .08 or greater, she is guilty of violating the OUI statute, and if they do not so find, they may still consider whether she violated the statute by operating while under the influence of intoxicating liquor."

*Id.* at 817. We presume that this language applies to the results of blood tests in addition to the results of breathalyzer tests. After issuance of *Commonwealth* v. *Colturi, supra,* we held, in *Commonwealth* v. *Hubert, supra,* that where the Commonwealth relied solely on an impaired operation theory, and the judge admitted breathalyzer results without expert testimony and over the defendant's objection, admission of the results required reversal. *Id.* at 664.

In this case, the complaint charged both theories. The judge admitted evidence of the defendant's blood alcohol content without expert testimony to explain its relationship to intoxication. The judge did not instruct the jury on the per se theory. Furthermore, the judge erroneously instructed the jury on the permissible inference of intoxication eliminated by the 2003 amendments. See

*Commonwealth* v. *Colturi, supra* at 811-812; *Commonwealth* v. *Hubert, supra* at 662 n.2.[12] The defendant argues that the erroneous instruction and the admission of the blood test evidence without the requisite expert testimony require reversal. Since the defendant did not object to the alleged errors, we review for the substantial risk of a miscarriage of justice. Under that standard, the question becomes whether the erroneous instruction and the blood alcohol evidence may have influenced the verdict of guilt. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). See *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002); *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002).

Even without the blood test, the Commonwealth's evidence of intoxication was strong. The percipient witnesses testified that the defendant drove through a stop sign at a high speed and hit the victim's vehicle. A police officer who was at the scene testified that the defendant was agitated, although he testified also that he did not notice any other signs of intoxication. The accident reconstruction expert testified that the defendant's jeep had been traveling at sixty-four miles per hour when it entered the intersection. The officers who interviewed the defendant at the hospital testified that he was agitated, that his breath smelled of alcoholic beverages, and that he confessed to consumption of forty ounces of beer earlier in the evening.

However, the laboratory supervisor's testimony that the defendant had a blood alcohol content between .15 and .16 percent may have been the most compelling evidence of intoxication. Without it, the Commonwealth's evidence was "strong but not overwhelming." *Commonwealth* v. *Hubert*, 71 Mass. App. Ct. at 663. Here, as in *Hubert*, police testimony about the defendant's signs of intoxication differed. Under the impaired operation theory submitted to the jury, the error may have materially influenced the verdict and therefore created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967)[13]; *Commonwealth* v. *Alphas*, 430 Mass. at 13.

---

[12]The charge conference and instructions to the jury in the trial occurred in May, 2006. The Supreme Judicial Court released the *Colturi* decision in April, 2007; this court released the *Hubert* decision in May, 2008. Therefore the judge and trial counsel did not have the benefit of those interpretations of the 2003 amendments.

[13]In *Commonwealth* v. *Hubert, supra* at 664, defense counsel made timely

*Conclusion.*[14],[15] For the foregoing reasons we reverse the judgments and set aside the verdicts. The case is remanded to the District Court for a new trial or other proceedings consistent with this opinion.

*So ordered.*

---

objections and preserved the issue so that the standard of review was the presence of prejudicial error. Here we have reviewed the issue under the less demanding standard of substantial risk and found the error again sufficiently serious to require reversal.

[14]As mentioned in the introduction, *supra*, the defendant argues also that extraneous influences on the jury and alleged calculated impropriety by the prosecutor require reversal. The extraneous influences were (1) a shout by the victim's mother at the defendant as the jurors left the courtroom on the first day of trial, and (2) the presence of a makeshift memorial to the victim at the accident scene during the jury's view of the site. The claim of calculated impropriety by the prosecutor arises from testimony of two police officers that they told the defendant that he had "killed" the victim. The defendant asserts that the prosecutor intended that the officers testify in this manner, in violation of the judge's decision on a motion in limine. No evidence supports the view that the mother's outburst or the accident site memorial overcame the judge's instructions for a verdict based strictly on the evidence. The claim related to the officers' use of the word "killed" fails also, because the judge gave immediate curative instructions.

[15]The defendant presented no issue of a denial of the right to confrontation guaranteed by the Sixth Amendment to the United States Constitution by reason of the admission of the blood alcohol test result. The rule of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), has played no part in the appeal.