NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-147

COMMONWEALTH

vs.

DOMENIC A. COLUMBO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Superior Court, a jury found the defendant, Domenic Columbo, guilty of two counts of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b), and one count of operating under the influence of alcohol causing serious bodily injury, G. L. c. 90, § 24L.  We agree with the defendant that the process used to discharge a deliberating juror requires reversal, and we comment briefly on additional claims bearing on a retrial.

Background.  On December 31, 2017, the defendant, a Boston police officer, completed his New Year's Eve shift and drank beers with other officers for several hours until about 3 A.M. About twenty minutes later, the defendant drove his personal

Ford F-150 pickup truck into a Columbia Road intersection at sixty-five miles per hour through a zone limited to twenty-five miles per hour, and crashed, without braking, into a Honda Accord that was turning left at the intersection. Two occupants in the Honda, Jose Teixeira and Jay Dos Santos, suffered serious injuries. Another motorist stopped to render aid and saw the defendant turn off his police radio scanner and "pretend[] to pass out." After medical personnel transported the defendant to the hospital, a treating physician noticed that he "smelled like alcohol." Hospital personnel obtained a blood sample as part of a "trauma order set." The defendant had a blood alcohol level between .11 and .12.

Discussion. 1. Discharge of deliberating juror. An alternate juror may be substituted when a deliberating juror "dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court." G. L. c. 234, § 26B. Accord Mass. R. Crim. P. 20 (d) (3), 378 Mass. 889 (1979). "The discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error. It is to be done only in special circumstances, and with special precautions." Commonwealth v. Connor, 392 Mass. 838, 843 (1984). Discharge must be based upon "reasons personal to [that] juror, having nothing whatever to do with the issues of the case or with the

2

juror's relationship with his fellow jurors." Id. at 844-45. When a juror asserts an incapacity to continue serving, a hearing must be held where the judge "should preliminarily inform [the juror] that he cannot be discharged unless he has a personal problem, unrelated to his relationship to his fellow jurors or his views on the case." Id. at 845. This advisory and hearing are necessary to satisfy the judge that the alleged incapacity is not a "mere euphemism[] for the truth: that the juror was persistent in asserting a minority position during deliberations." Id. at 846.

Neither the advisory nor the hearing occurred here. At the start of the third day of deliberations, the judge reported to counsel that the court received a recorded phone message from a juror. According to the judge, who listened to the message (not made part of the record), the caller "sounded quite out of it" and "had a fever, serious GI issues, and was not going to be here today." Over the defendant's objection, the judge found that the juror's illness was "going to disable her for several days," and concluded that he had "no choice, but to excuse her." This procedure was not adequate to discharge a deliberating juror.

Juror service is at its apex in deliberations and cannot be terminated by a juror merely calling in sick through a voicemail

3

message.  See Commonwealth v. Perez, 30 Mass. App. Ct. 934, 935 (1991) (error to discharge deliberating juror where nothing in record "beyond the judge's statement that a juror was 'sick'").  Without the requisite advisory and hearing, the judge had no basis for assuring himself that the juror's voicemail message was "unrelated" to the juror's "relationship" to fellow jurors or the merits of the case.  Connor, 392 Mass. at 845.  See, e.g., Commonwealth v. Holley, 478 Mass. 508, 530 (2017) (deliberating juror properly discharged where judge telephoned ill juror, questioned her in presence of counsel, provided opportunity for counsel's questions, and made specific findings).  Therefore, the defendant's convictions must be vacated.

2.  Sufficiency of evidence.  The defendant challenges the sufficiency of the evidence showing that he was under the influence of intoxicating liquor.  "[T]he phrase 'under the influence' refers to impairment, to any degree, of an individual's ability to safely perform the activity in question."  Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016).  "Thus, 'in a prosecution for [OUI], the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely.'"  Id.  Impairment

4

may be proven by circumstantial evidence.  See Commonwealth v. Flanagan, 76 Mass. App. Ct. 456, 464 (2010); Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321 (1994).  We consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found" this essential element beyond a reasonable doubt.  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

Ample evidence enabled jurors to conclude that alcohol diminished the defendant's ability to operate his vehicle safely.  He consumed alcohol in the hours preceding the crash, he approached an intersection at high speed, he drove at a speed that exceeded the speed limit, he failed to yield to a vehicle passing through an intersection, he failed to apply the brakes before the crash, he smelled of alcohol, and his blood alcohol content exceeded the legal limit.  Such evidence was sufficient. See, e.g., Commonwealth v. Colturi, 448 Mass. 809, 817 (2007) (impairment inferred from evidence including blood alcohol content above legal limit); Commonwealth v. Proia, 98 Mass. App. Ct. 125, 127-28 (2020) (impairment inferred from evidence including serious motor vehicle crash and odor of alcohol); Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 353-54 (2015) (impairment inferred from evidence including consumption of

alcohol, odor of alcohol, and speed). Contrary to the defendant's claim, the Commonwealth was not required to produce expert testimony establishing the significance of his blood alcohol level where the case was tried on both per se and impairment theories. See Colturi, 448 Mass. at 817; Commonwealth v. Douglas, 75 Mass. App. Ct. 643, 652 (2009). Additionally, jurors could have inferred consciousness of guilt in the aftermath of the crash where the defendant turned off his police radio scanner and "pretend[ed] to pass out" when approached by a motorist coming to his aid. See Commonwealth v. Indrisano, 87 Mass. App. Ct. 709, 718 (2015) (consciousness of guilt inferred from concealment or similar acts).

To the extent the defendant claims his position is aided by the absence of a special verdict slip, we disagree. In addition to showing impairment, evidence also showed the defendant had a blood alcohol level between .11 and .12. Such evidence allowed jurors to conclude that the defendant had a blood alcohol level above the .08 percent limit and provided an alternative and sufficient basis of liability. See Colturi, 448 Mass. at 810 (blood alcohol percentage of .08 constitutes per se violation that is alternative to impaired ability violation); Commonwealth v. Douglas, 75 Mass. App. Ct. 643, 652 (2009).

6

3. Authentication of blood vial photographs. The judge denied the defendant's motion in limine to exclude evidence that his blood had been drawn at the hospital. On appeal, the defendant contends that his motion should have been allowed because no one could authenticate photographs of blood vials, and no one testified as to who had extracted a sample of the defendant's blood. Although no evidence indicated who extracted the defendant's blood, sufficient "confirming circumstances" indicated that the photographs depicted vials containing the defendant's blood extracted by medical personnel at the hospital following the crash. See Commonwealth v. Purdy, 459 Mass. 442, 450-451 (2011).

"[E]vidence may be authenticated by circumstantial evidence alone, including its '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics'" (citation omitted). Commonwealth v. Davis, 487 Mass. 448, 466 (2021). Here, evidence showed that a physician ordered blood tests for the defendant; the nurse testified to the procedure for extracting and storing a blood sample, including putting a label on the vial with the patient's name and date of birth; and medical records indicated blood tests were performed. Thus, the evidence presented "an ample foundation for the judge to determine that a reasonable jury could find by a preponderance

7

of the evidence" that the photographs depicted vials of the defendant's blood drawn at the hospital.  Commonwealth v. Welch, 487 Mass. 425, 442 (2021).  Moreover, any argument relating to the "[a]lleged defects in the chain of custody usually go to the weight of the evidence and not its admissibility."  Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 230 (1992).

4.  Medical records.  The defendant asserts that the judge erred in allowing highly prejudicial propensity evidence to be admitted through the defendant's medical records.  Specifically, the defendant objected to specific references in the medical records indicating that "the patient endorsed daily alcohol consumption," and that the discharge instructions included "learning about alcohol misuse."  The defendant argues that these references undermined the defense and suggested that the defendant was an alcoholic who consumed excessive alcohol on the day in question.  See Commonwealth v. Thomas, 44 Mass. App. Ct. 521, 524 (1998) ("[E]vidence of prior bad acts may not be received to show the defendant's propensity to commit the crime charged").  The Commonwealth concedes that the admission of the discharge instructions titled "Learning about Alcohol Misuse" constituted error but argues that such evidence was not prejudicial to the defendant.  Given the posture of this case, we need not assess the impact of this evidence, but we note in

8

the event of a retrial, the judge may consider anew whether the probative value of this portion of the medical records is substantially outweighed by the danger of unfair prejudice. See Mass. G. Evid. § 403 (2024).

Judgments vacated.

Verdicts set aside.

By the Court (Meade,
Hodgens & Toone, JJ.[1]),

Clerk

Entered: June 20, 2025.

---

[1] The panelists are listed in order of seniority.